CAROLINE IDEL, Respondent, v. EDWARD MITCHELL,
Appellant.

NEGLIGENCE — LANDLORD AND TENANT — PROOF OF OWNER'S ACTUAL
OR CONSTRUCTIVE KNOWLEDGE OF EXISTENCE OF CAUSE OF ACCIDENT
ESSENTIAL TO RECOVERY BY TENANT FOR PERSONAL INJURY.  To war-
rant a recovery from the owner, by a tenant of a part of a building, for a
personal injury caused by a protruding nail in a stair, the evidence must
establish either that prior to the accident the defendant knew of the pro-
trusion of the nail, or that the nail had protruded for such a length of
time that the defendant should have known of it.

*Idel v. Mitchell*, 5 App. Div. 268, reversed.

(Submitted January 16, 1899; decided February 3, 1899.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered May
22, 1896, affirming a judgment in favor of plaintiff entered
upon a verdict, and an order denying a motion for a new
trial.

The plaintiff, who with her husband had occupied the third
floor of defendant's building for a period of ten years, was on
the 24th day of February, 1893, engaged in sweeping the
stairs between the second and first floors when she caught her
foot on a nail and fell backwards down the stairs.  The result
was an injury, and this action was brought to recover dam-
ages sustained.

The plaintiff testified that until a short time previous to the
accident there had been a carpet or crash upon the stairs,
which, after removal, disclosed a number of nails sticking up
in the steps of the staircase.  By the terms of the lease plain-
tiff was required to clean her own stairs leading from the
third story to the second, and when the second story was
occupied the tenant of it was required to clean the stairs lead-
ing from that floor to the first.  The second floor was tenant-
less for some time, and so the plaintiff cleaned the stairs lead-
ing from the second to the first floor, as well as that from the
third to the second, and this she did on Friday of each week.
As to the nails in the steps the plaintiff testified: " I said

something to Mr. Halsey about there being a nail or more nails in the stairway. Mr. Halsey said : ' Better take a hammer and drive them in.' He was joking — ' Better take a hammer and drive it in.' That was done. I did it myself. I had a hammer in my premises. That was about a couple of weeks before I was hurt. Six weeks. or around like that — six weeks or a couple of months.

Q. Did you drive in more than one nail ? A. Yes, sir.

Q. All you could find ? A. Yes, sir. When I washed the floors or walls, when there was one out, I knocked it in, or I would spoil my fingers.

Q. As a matter of fact, you drove in all the nails that were sticking out that you could see ? A. That I could see.

Q. What part of the stairs was it you drove the nails in ? A. In all parts.

Q. If there was a nail sticking up high enough for anybody to see it, you drove it in ? A. If I felt it, scrubbing the stairs.

Q. You used to scrub the stairs ? A. Yes, sir.

Q. How often did you scrub the stairs you fell down ? A. Nobody was living there. I did not scrub that flight of stairs; I only swept it.

Q. You went up and down ? A. Yes, sir.

Q. When you swept the stairs — how often did you sweep the stairs ? A. Once a week.

Q. What night was it you were hurt ? A. Friday night.

Q. Did you sweep it the same day in the week? A. Friday ; Saturday morning it was clean.

Q. You swept it every Friday night ? A. Yes, sir ; nobody was living on the floor.

Q. When did you say you noticed there was a nail or two — when you were scrubbing, or sweeping, or both ? A. When I was sweeping.

Q. The stairs you used to sweep down are those where you fell ? A. Yes, sir.

Q. And whenever you noticed a nail sweeping, you drove it in ? A. Yes, sir.

Q. During the two months prior to the accident you swept the entire stairway every Friday, didn't you ? A. Yes, sir.

Q. In the same general way ? A. Yes, sir.

Q. Did you step on this nail, or how was it you caught yourself ? A. I was sweeping ; all at once I stepped on the nail.

Q. Stepped on it ? A. Yes, sir; I had my foot out and fell backwards.

Q. You had never noticed nails in this particular stairway before that time, I suppose ? A. No. * * * That nail, I think, I tumbled over on Friday, I did not see that nail there the Friday before."

The plaintiff's husband testified : " I examined the stairs the morning following the injury and I found some nails. They were sticking up from the step. They were protruding from and above the step — a quarter of an inch, and some half an inch. I took a hammer and a pair of pliers, and some I pulled out and some I knocked in.

Q. In other words, did the step move up and down on the nail or was it tight ? A. Tight. The nail protruded.

Q. The nails you pulled out, what were their condition — were they apparently good nails or rusted ? A. Rusted.

The sixth juror :

Q. I will ask him to describe the nail. In what part of the step was it ? A. On the side. The front edge. It protruded above the step at the front edge of the step. I pulled it out. I did not keep the nail. I had pulled out other nails and driven other nails in the whole stairs, from the top to the bottom.

Q. Was this nail the same kind of a nail you say you saw just after the carpet was taken up ? A. *No, all different. I did not examine them. I did examine it* enough to give the jury a fair description of it. I testified to the jury that when the carpet was taken up there were some nails there. I saw this nail. I pulled out some and drove in others whenever I got the chance. This nail was of the same general kind as those nails."

No other witnesses were sworn on behalf of the plaintiff, nor did the evidence adduced on the part of the defendant strengthen the plaintiff's case.

The question presented is whether the motion to dismiss the complaint should have been granted.

*Austen G. Fox* for appellant. The court ought to have dismissed the complaint because the plaintiff failed to show that she was free from contributory negligence. ( *Whalen* v. *C. G. L. Co.*, 151 N. Y. 70; *Thomas* v. *Quartermaine*, L. R. [18 Q. B. D.] 685; 7 Am. & Eng. Ency. of Law [2d ed.] 397; *Wohlfahrt* v. *Beckert*, 92 N. Y. 490.)

*William King Hall* for respondent. The owner of a tenement house let not as an entirety, but in separate apartments to different tenants, the common passageways being reserved, is bound to keep such passageways in repair, and is liable to a tenant for an injury caused by his neglect to do so. (*Dollard* v. *Roberts*, 130 N. Y. 269; *Bold* v. *O'Brien*, 12 Daly, 163; *Dowd* v. *Fitzpatrick*, 18 Wkly. Dig. 343; *McRickard* v. *Flint*, 114 N. Y. 226; *Henkel* v. *Murr*, 31 Hun, 28; *Spellman* v. *Bannigan*, 36 Hun, 176; *Brennan* v. *Lachat*, 6 N. Y. S. R. 278; *Wiley* v. *Mulledy*, 78 N. Y. 311; *Hilsenbeck* v. *Guhring*, 36 N. Y. S. R. 452.) The plaintiff was not as a matter of law guilty of contributory negligence, and, therefore, the motion for a nonsuit on that ground was properly denied. (*Dollard* v. *Roberts*, 130 N. Y. 269.) The defendant's negligence was clearly established by the evidence. (*Rouillon* v. *Wilson*, 29 App. Div. 307.) The questions as to defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury, and it was not error for the court to refuse to determine them as matters of law. (*Goff* v. *Akers*, 21 N. Y. Supp. 454; *Elze* v. *Baumann*, 2 Misc. Rep. 72; *Richmond* v. *S. A. R. R. Co.*, 76 Hun, 233; *Wilcox* v. *N. Y., L. E. & W. R. R. Co.*, 88 Hun, 263; *Stedman* v. *City of Rome*, 88 Hun, 279; *Chisholm* v. *State*, 141 N. Y.

18

246; *Pitts* v. *N. Y., L. E. & W. R. R. Co.*, 79 Hun, 546; *Sickles* v. *N. J. I. Co.*, 80 Hun, 213; *Sullivan* v. *City of Syracuse*, 77 Hun, 440; *Morrison* v. *M. T. Co.*, 69 Hun, 100.)

Parker, Ch. J.   For the purposes of this appeal, at least, it must be deemed to be true that the plaintiff fell owing to a protruding nail in the stairs, and the injuries occasioned thereby this defendant should respond for, providing the plaintiff proved that the protruding nail was due to the fault of the defendant, otherwise not.   Such fault would have been shown had the plaintiff proved that prior to the accident the defendant or his agent had knowledge of the protrusion of the nail, or that it had been in that situation for such a length of time that the defendant should have known of it.   But it was not proved that any one ever saw this nail prior to the happening of the accident.   For aught that appears in the testimony it may have been either partly driven into or pulled out of the step within fifteen minutes prior to the accident. It may have been there longer, but whether it was or not the evidence does not disclose; that it had been there longer there is evidence from which a guess might be hazarded, but it would be a mere guess, and guesses have not as yet been, in terms, held to be a proper substitute for proof.   The evidence that furnishes an excuse for a guess that the protruding nail may have been in that situation for more than fifteen minutes prior to the happening of the accident is to be found in the testimony of the plaintiff, in which she says, in effect, that some little time previous to the accident a stair carpet had been removed, and thereafter every Friday she swept and scrubbed the stairs, in the doing of which she noticed a large number of nails sticking up, and she spoke to the defendant's agent about it, who told her to drive them in; and she took a hammer and drove in all the nails she could find.   On the Friday preceding the accident the plaintiff saw some nails sticking up, but she drove in every one of them.   She testified:   Q.  " Did you drive in more than one nail?   A. Yes,

sir.　Q. All you could find?　A. Yes, sir; when I washed the floors or walls, when there was one out I knocked it in or I would spoil my fingers.　Q. As a matter of fact you drove in all the nails that were sticking out that you could see?　A. That I could see.　Q. What part of the stairs was it you drove the nails in?　A. In all parts."

Thus it appears from the plaintiff's own testimony that one week before the happening of the accident she personally drove in all the nails she could find.　No one contradicts her, nor asserts the fact to be that this nail was left protruding after she had completed the task that she set herself, for the very satisfactory reason given by her that she drove in all the nails she could find.　Some readers of the testimony might surmise that notwithstanding all her great care she overlooked the nail that caused the trouble, but others might guess that some child in play had pulled the nail partly out or driven one partly in, for, according to the testimony of plaintiff's husband, the step was " tight," rendering impossible the conclusion that the nail could have worked out by the springing of the step from the riser as people walked over it.　But it would be only a surmise after all, for the evidence does not establish either how the nail came to be in the position in which it was, or how long it had been there.

The plaintiff, therefore, failed to meet the burden resting upon her of establishing that the nail causing the mischief had protruded for such a length of time as to charge the defendant with constructive notice of its presence, and the motion for a dismissal of the complaint, therefore, should have been granted.

The judgment should be reversed, with costs.

All concur, except BARTLETT, J., not voting.

Judgment reversed, new trial granted, costs to abide event.