**Evelyn MONTELEONE and Charles Monteleone, Plaintiffs,**

v.

**BAHAMA CRUISE LINE, INC., Defendant.**

**No. 84 Civ. 4577 (KTD).**

United States District Court, S.D. New York.

May 22, 1987.

Rassner Rassner & Olman, New York City, for plaintiffs; Alan Rassner, of counsel.

Michael D. Martocci, New York City, for defendant; Howard W. Burns, Jr., of counsel.

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Evelyn Monteleone fell down a flight of stairs while she was a paying passenger on board the cruise ship S.S. VERACRUZ owned by the Bahama Cruise Line, Inc. ("Bahama"). This action is brought in the admiralty jurisdiction of this court to recover damages for her injuries. 46 U.S.C. § 740 (1982 & Supp.1983). Her injuries included the contusions and abrasions generally to be expected from a fall down a stairway, and a broken finger on her left hand. During her recovery from the broken finger, complications set in which have left much of Mrs. Monteleone's left hand useless; she is unable to bend her fingers to make a fist. Mrs. Monteleone is left handed in everything except writing. Her husband, plaintiff Charles Monteleone, seeks damages for the loss of his wife's services and society and for medical and other expenses resulting from her injury.

The stairway in question was covered by heavy carpeting. The tip of each stair tread was protected by a brass nosing strip affixed by brass screws through the carpet to some type of wood or metal anchor in the concrete or composition stairs underneath. It is Mrs. Monteleone's theory that her fall was occasioned when her shoe stuck in a screw which had become loose from this nosing, catching her foot and causing her to tumble forward.

The testimony of the chief steward aboard the ship showed that he inspected the stairs twice a day. Clearly this inspection was for both cleanliness and safety. The chief steward also testified that he had directed the ship's carpenter to inspect the stair treads twice a day. The ship's carpenter was the person who installed the metal strips at the edge of each stairway. The carpenter kept a daily log of all work done on the ship. The chief steward testified that this log or repair record was kept in the chief steward's office. Apparently these records have disappeared; Bahama was unable to produce them at trial. This record would have shown the number of times the stairs had been repaired and the frequency of those repairs. It seems clear to me that the stairs were, in fact, frequently repaired. I must draw this inference because while the chief steward and his assistant might inspect the stairway for cleanliness and overall good condition, it seems somewhat unusual to have the ship's carpenter twice daily inspect a concrete or composition staircase with carpeting unless the metal strips had in the past become loose and the ship was aware that they were in need of constant repair.

Charles Monteleone and the tour guide inspected the stairway in question and discovered that there was a screw protruding from the stairway by the metal strip. The tour guide testified that their inspection had been made on the same day as the accident after returning from the hospital. The defendants would have me credit the testimony of the ship's crew captain and discredit entirely the testimony of Mr. Monteleone and the tour guide. The ship's crew captain stated that while Mrs. Monteleone was at the ship's doctor, having arrived there at 7:50 A.M., he went and made a survey of the area to make sure that the ship was not at fault. He completed this inspection by 8:00 A.M. This was done at the same time the ship's doctor was obtaining a statement from Mrs. Monteleone and rendering *no* medical service to her. The alacrity with which the ship's personnel sprang to produce evidence rebutting liability goes against common human experience. Perhaps I could envisage a ship's doctor, wanting to avoid any possibility of a malpractice claim, refusing to treat a passenger and sending a passenger to a shore hospital for treatment. That apparently happened here. But I find that something more must have prompted the ship's doctor to demand a written statement of the accident from Mrs. Monteleone prior to her leaving the ship to receive medical aid ashore. Similarly, I cannot believe that the ship's captain could detach himself from his other duties to visit in the ship's hospital with the injured woman and then, rather than expedite her transfer to shore and

medical aid, run to the place of the accident in order to be able to testify that the ship was not at fault. Because I find these activities to be out of the ordinary, I discredit in large part the testimony of the ship's personnel in this regard.

In order to recover damages for their injuries, the Monteleones must prove that Bahama owed Mrs. Monteleone a duty of care, that Bahama breached that duty, that Mrs. Monteleone's fall was caused by Bahama's breach of duty, and that they suffered injury as a result of her fall.

Bahama owed the Monteleones a duty of reasonable care under the circumstances for the safety of its passengers. The factual circumstances determine whether "reasonable care" is a high degree of care, or something less. *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 170–71 (2d Cir.1983). "[T]he greater the degree of the carrier's control or the lesser the degree of the passenger's control over the factors causative of the injury, the easier it is to find negligence." *Id.* at 172 (Oakes, J., concurring).

■ Applying that standard to the circumstances of this case, I find that Bahama negligently breached its duty of care for Mrs. Monteleone's safety. The preponderance of credible evidence shows that: a screw was protruding up from the nosing strip on the stair over which Mrs. Monteleone fell; the staircase was inspected and cleaned twice daily by various ship personnel; the staircase had been inspected and cleaned the morning that Mrs. Monteleone fell; and the staircase had needed repairs in the past in order to keep it in a safe condition. I find that allowing a screw to protrude from the stair's nosing strip was a negligent breach of Bahama's duty of care for Mrs. Monteleone's safety. I also find that Mrs. Monteleone's fall was caused by Bahama's breach of that duty. Finally, I find that the Monteleones have proven by a preponderance of the evidence presented that, as a result of her fall, Mrs. Monteleone was injured, necessitating expenditures for medical care and other services, and resulting in permanent disability of her left hand.

■ The trial record contains evidence of Mrs. Monteleone's medical expenses for doctor visits and physical therapy visits and treatments and of insurance reimbursements for those expenses. Trial Exhibit U. Mrs. Monteleone's painful condition appears to be permanent and without hope of medical amelioration. Thus, future medical expenses are too speculative to award. Accordingly, damages for past medical expenses not reimbursed by insurance are awarded in the amount of $3,878.95.

■ The questions of pain and suffering and physical impairment, both past and future, were graphically shown at trial. No cold record can show the pain evident in the plaintiff's eyes when she displayed her twisted left hand and told of her suffering. To say that this type of pain can be totally compensated by dollars is to say that our justice system is run by cold-hearted people reminiscent of unrepentant scrooges enjoying their seat in the counting house. Yet, the law requires that I compensate the plaintiff exactly that way. Accordingly, the amount of pain and suffering initially brought about by the fall and fracture is set at $5,000; and the amount set for the pain and suffering during the period from the time Mrs. Monteleone left the ship upon its return to the United States to date (including that caused by the attempted straightening of her fingers) is set at $35,-000.

■ That there will be extensive pain and suffering in the future is clear. I assign $10 per day to cover this pain and suffering, although no sane person would knowingly permit her-or himself to be so sorely treated for such a paltry sum. According to standard mortality tables, Mrs. Monteleone has at present a statistical life expectancy of 14.6 years. Multiplying the number of years by 365 days/year and again by $10 per day results in the sum of $53,290. Accordingly, this court finds that Mrs. Evelyn Monteleone is entitled to recover total damages of $97,168.95 from the defendant Bahama.

■ As to the claim for lack of consortium, services and society by Mr. Montel-

eone, there was little evidence to support more than a finding that he was subjected to minor inconveniences. Damages will be awarded on this cause of action in the amount of $500.

This constitutes the findings and conclusions of the court. Settle judgment on five (5) days' notice within ten (10) days of the date of this Opinion.

SO ORDERED.