The appeals are dismissed for lack of jurisdiction.

---

**Evelyn MONTELEONE, Charles Monteleone, Plaintiffs–Appellees,**

v.

**BAHAMA CRUISE LINE, INC., Defendant–Appellant.**

No. 373, Docket 87–6166.

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1987.

Decided Jan. 28, 1988.

Howard W. Burns, Jr., New York City (Michael D. Martocci, New York City, of counsel), for defendant-appellant.

Alan C. Rassner, New York City (Rassner, Rassner & Olman, New York City, of counsel), for plaintiffs-appellees.

Before TIMBERS, MESKILL and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff-appellee Evelyn Monteleone fell down a flight of stairs aboard the VERA-

CRUZ, a cruise ship owned by defendant-appellant Bahama Cruise Line, Inc. (BCL). Mrs. Monteleone, who is left handed for all purposes except writing, broke the ring finger of her left hand and continues to suffer pain and limitation of motion in the hand. She sued BCL in the United States District Court for the Southern District of New York, seeking damages for her injury; her husband also sued for the loss of his wife's services and society. The district court, Duffy, J., exercising jurisdiction in admiralty, 46 U.S.C. § 740 (1982), held that BCL had negligently caused Mrs. Monteleone's injuries. *Monteleone v. Bahama Cruise Line, Inc.*, 664 F.Supp. 744, 746 (S.D.N.Y.1987). The court set Mrs. Monteleone's damages for medical expenses and pain and suffering at $97,168.95, and awarded her husband $500 for "minor inconveniences." *Id.* at 746–47.

On appeal, BCL argues that it should not have been held liable, that in any event the award was excessive, and that the award if correct should have been discounted to present value. The Monteleones argue that the district court's findings are not clearly erroneous and should not be disturbed, and that the holding of liability was correct on the facts found. They also contend that prejudgment interest should be awarded if we hold that the damages are to be discounted.

For reasons that follow, we reverse the judgment on the liability question and remand to the district court with instructions to dismiss the complaint.

## DISCUSSION

The evidence, often sharply contradictory, centered on one of several screws holding a brass strip or "nosing" to the edge of a step on the stairway where Mrs. Monteleone fell. There was testimony that the stairway was regularly inspected and cleaned, and that no defect was observed before the accident. Moreover, the ship's Staff Captain inspected the stairs immediately afterward and found no defect. The only witnesses who testified to seeing the protruding screw had returned to the stairway several hours after the accident. Nevertheless, the district court credited testimony that the screw did in fact protrude and accepted Mrs. Monteleone's theory that she tripped over it. The court further held that "allowing [the] screw to protrude ... was a negligent breach of [BCL]'s duty of care" that caused her injury. 664 F.Supp. at 746.

In concluding that BCL breached the duty it owed Mrs. Monteleone, the district court relied heavily on a chain of inferences involving inspections aboard the VERA-CRUZ. Testimony indicated that the ship's Chief Steward and carpenter inspected the entire ship, including the stairways, several times a day. It was disputed whether the carpenter kept a log or record of his inspections and repairs; although the Chief Steward testified that the carpenter kept a log, BCL denied that any such record existed and none was ever produced. The district judge found that this record, if produced, "would have shown the number of times the stairs had been repaired and the frequency of those repairs." *Id.* at 745. The judge further inferred that "the stairs were, in fact, frequently repaired," relying on the proposition that the inspection policy was inexplicable "unless the [nosings] had in the past become loose and the ship was aware that they were in need of constant repair." *Id.*[1] In his specific findings relating to liability, he more narrowly stated that "the staircase had needed repairs in the past in order to keep it in a safe condition." *Id.* at 746. He made no express finding that BCL had actual or constructive notice of the screw's protrusion.

■■■ Disposition of this appeal turns on the duty of care with which a shipowner is chargeable. Although some older cases called for a higher degree of care aboard ship, it is now clear in this Circuit that the appropriate standard is one of reasonable

1. The district judge drew adverse inferences from BCL's failure to produce the repair log, but he did not mention and evidently attributed no significance to Mrs. Monteleone's failure to produce the shoes she was wearing when she fell. The shoes might have shed some light on the causation issue. Although Mrs. Monteleone delivered the shoes to her attorney's office, they inexplicably disappeared and were not produced at trial. *See* J.App. at 42.

care under the circumstances. *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir.1983). "The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case." *Id.* Consistent with these principles, a shipowner is not an insurer of its passengers' safety. *See Moore v. American Scantic Line, Inc.*, 121 F.2d 767, 768 (2d Cir.1941); *Demgard v. United States*, 94 F.Supp. 309, 310 (S.D.N.Y.1950) (Kaufman, J.); G. Gilmore & C. Black, *The Law of Admiralty* 23 n. 77 (2d ed. 1975). There thus must be some failure to exercise due care before liability may be imposed.

■ In addition, a shipowner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them. *See Rainey*, 709 F.2d at 172; *Demgard*, 94 F.Supp. at 311; *Dann v. Compagnie Generale Transatlantique*, 45 F.Supp. 225, 226 (E.D.N.Y.1942). This principle parallels treatment of landowners' liability for dangerous conditions, for which actual or constructive notice of the condition is required, *see Ferrara v. Sheraton McAlpin Corp.*, 311 F.2d 294, 296 (2d Cir. 1962) (New York law) (Marshall, J.); *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837–38, 501 N.Y.S.2d 646, 647, 492 N.E.2d 774 (1986) (mem.) (New York law); *Idel v. Mitchell*, 158 N.Y. 134, 139, 52 N.E. 740 (1899) (landowner not liable for injury caused by nail protruding from step absent actual or constructive notice; New York law). *Cf. Rainey*, 709 F.2d at 172 (Oakes, J., concurring) (shipowner's position "no different ... from that of a possessor of land" where shipboard hazard was like those encountered ashore); G. Gilmore & C. Black, *supra*, at 23 n. 77 (principles of shipowner's liability in negligence for injuries to passengers "differ little from those in use ashore"). The analogy to landowners' liability is especially apt where the hazard encountered is not unique to the maritime environment. *Rainey*, 709 F.2d at 172.

■ In this case, BCL's conduct is measured against a standard of ordinary reasonable care because the protruding screw, like the stool left in the middle of the dance floor in *Rainey*, is "a condition in no way peculiar to maritime travel," *id.* Under this standard, the district court erred as a matter of law in holding that merely *allowing* the screw to protrude constituted a breach of BCL's duty to Mrs. Monteleone. In so holding, the court incorrectly made BCL an insurer of Mrs. Monteleone's safety. BCL's liability properly turns on whether it had notice of the screw's protrusion. Since no one contends that BCL had actual notice, the issue becomes whether it had constructive notice. The court made no express finding on this matter. Nor is there an acceptable implicit finding of constructive notice. Even if the district judge intended to make such a finding by inferring that the stairs were "in need of constant repair," we would be obliged to reverse. He based this inference on supportable findings that a repair log existed and if produced would have shown when the stairs were repaired. His further inferential conclusion that the stairs "were, in fact, frequently repaired" was, however, without basis in the record. What the log *might* have disclosed if produced is entirely a matter of conjecture: it is equally possible that it would have shown *no* repairs to the stairs. Here the judge engaged in impermissible speculation that can support neither a conclusion of negligence, *see Calvert v. Katy Taxi, Inc.*, 413 F.2d 841, 844 (2d Cir.1969), nor a finding of constructive notice. Therefore, the judgment cannot stand.

■ It is a closer question whether we should remand for further inquiry into the issue of constructive notice. With due regard for the proper standard of care and the limited scope of our review of factual findings, *see* Fed.R.Civ. P. 52(a); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); *Brand v. Brand*, 811 F.2d 74, 77–78 (2d Cir.1987), we find no evidence in the record that BCL had constructive notice of the protruding screw. Such notice requires that a defective condition exist "for a sufficient interval of time to invite corrective measures." *Dann*, 45 F.Supp. at 226; *see, e.g., Ferrara*, 311 F.2d at 296; *Demgard*, 94 F.Supp. at 310; *Gordon*, 67

N.Y.2d at 837, 501 N.Y.S.2d at 647; *see also Rainey,* 709 F.2d at 170 (noting lack of evidence as to how long condition had existed prior to accident); *Idel,* 158 N.Y. at 139, 52 N.E. 740 (same). This requirement cannot be met on the record before us. We accept as not clearly erroneous the district court's findings that the screw protruded and Mrs. Monteleone tripped on it. Nevertheless, no witness testified to seeing the protruding screw prior to the accident. The ship's Staff Captain, the only witness to inspect the scene immediately after the accident, found nothing amiss. Other witnesses visited the scene only later, one several hours and others up to eight hours afterward. Moreover, testimony indicated that the stairs were cleaned and inspected on a regular basis and no defect was detected prior to the accident. These regular inspections weigh in BCL's favor. *Cf. Demgard,* 94 F.Supp. at 310 (shipowner not liable in absence of notice where deck was inspected frequently). The district court's elaborate chain of inferences leading to a contrary interpretation defies logic. *Cf. Mehra v. Bentz,* 529 F.2d 1137, 1139 (2d Cir.1975) ("inferences of negligence may be drawn from circumstantial evidence ... [but] must be the only ones which *reasonably could be drawn* from the evidence") (New York law), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *Prosser and Keeton on the Law of Torts* § 39, at 242–43 (W. Keeton 5th ed. 1984) (inference must be based on evidence sufficient in light of human experience to justify conclusion). The district court's analysis paradoxically makes frequent inspection evidence of the dangerous condition of the ship, a theory hardly deserving of support as a policy matter and doubly suspect where, as here, there was no suggestion that the ship was otherwise unsafe or dangerous. It assumes too much to argue, as the Monteleones do, that "[m]ultiple daily inspections of the stairway imply problems," Br. of Appellee at 14, in the absence of *any* evidence of such problems. Be-

cause the record is devoid of any evidence indicating that the condition of the screw existed long enough to put BCL on notice,[2] we conclude that the judgment must be reversed.

On this record, we simply cannot conclude that BCL's failure to discover the condition of the protruding screw, assuming as we do that it existed prior to the fall and in fact caused the fall, constituted a lack of due care for which it should be held liable.

### CONCLUSION

We reverse the judgment and remand to the district court with instructions to dismiss the complaint. In view of this disposition, we need not consider the parties' arguments concerning calculation of damages and interest.

---

2. The district court did not expressly rely on testimony of Saul Burg, the plaintiffs' carpet expert, who opined that screws in installations of this type might work loose only gradually. Since Burg had never inspected the installation at issue and his opinion was based on hypothetical propositions not in evidence, his opinion was of questionable probative value. But even if credited, his testimony would not be evidence that the condition had existed for a sufficiently long period of time to charge BCL with constructive notice.