**Millicent LEE, et ano., Plaintiff,**

v.

**REGAL CRUISES, LTD., et ano., Defendants–Third Party Plaintiffs,**

v.

**Milan KUTANOVSKI, Third Party Defendant.**

**No. 94 Civ. 7687 (LAK).**

United States District Court, S.D. New York.

Feb. 22, 1996.

Robert A. Bloom, New York City, for Plaintiffs.

Peter A. Junge, Carol N. Lambos, Lambos & Junge, New York City, for Defendants–Third Party Plaintiffs.

William D. Gallagher, McMahon, Martine & Gallagher, New York City, for Third Party Defendant.

## AMENDED MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Millicent Lee slipped on a staircase aboard the REGAL EMPRESS on the night of October 8, 1993 and fractured her left patella. She was evacuated from the ship and, while undergoing a manual manipulation of her left knee under general anesthesia, performed by a physician unconnected with the ship and its owners, sustained a fracture of the left distal femur. She and her husband have brought this action against the ship's owners. The owners have impleaded the treating physician, against whom plaintiffs subsequently made a direct claim. The owners now move for summary judgment dismissing plaintiffs' complaint against them. Plaintiffs in turn cross-move to amend the complaint.

### Facts

On the night in question, plaintiff, her husband, and another couple, the Paynes, spent a presumably pleasant evening, dining and watching the entertainment provided on the so-called Cruise to Nowhere aboard the REGAL EMPRESS. They and a third couple had consumed a bottle of champagne with dinner. The Lees and the Paynes proceeded in due course to a jazz concert in the Mermaid Lounge where Mrs. Lee took a glass of white wine. They then left the Mermaid Lounge and descended an interior staircase to the Promenade Deck. Mrs. Lee held the glass of wine in her right hand. When she reached the last or the penultimate step, she twisted her right ankle and fell on her left knee, breaking her patella.

Plaintiffs brought this action on or about September 21, 1994 in the New York Supreme Court.[1] The complaint alleges that the fall was caused by "a defective condition that existed on [the] stairway" and that the defendants had been negligent "in the ownership, operation, maintenance and control of the aforementioned stairway and steps ..." (Cpt ¶¶ 18–19)

The Court, with the agreement of counsel, entered a scheduling order which required that any amendment of the pleadings be made by February 15, 1995 and, as amended, that discovery be concluded by December 22, 1995.

Mrs. Lee was deposed on March 2, 1995. She testified that the carpeting on the stairs was "older," that the steps had metal stripping on their edges, that it had been raining "quite heavily," and that the ship was pitch-

---

1. The action was removed. This Court denied plaintiffs' motion to remand. *Lee v. Regal Cruises, Ltd.,* 1995 A.M.C. 782, 1995 WL 4297 (S.D.N.Y.1995).

ing. (M. Lee Dep. 43–45, 62) As she descended the steps, she held the bannister "a little bit for balance, because the ship ... was rough." (*Id.* 66) She then stepped on something that caused her ankle to twist, discovering immediately that the substance in question was "[l]ittle ice cubes in the melting stages." (*Id.* 66–67; *see also id.* 68–69) Mrs. Lee acknowledged that she had no idea how long the ice cubes had been on the steps or how they had gotten there. (*Id.* 71, 107) This testimony was consistent with a November 16, 1993 written statement that Mrs. Lee gave to the owners in which she also attributed the accident exclusively to water and ice cubes on the steps. (Lambos Aff.Ex.D)

Defendants filed this motion for summary judgment on December 15, 1995. The thrust of the motion is that there was no negligence because there is no evidence as to (1) how the ice cubes came to be on the steps or how long they had been there, and (2) the existence of any defect in the construction or arrangement of the steps. This evidently caused the plaintiffs to rethink their case.

Acknowledging "that an ice cube can melt rather quickly and that the plaintiffs could not truthfully say how long the particular ice cube on which [Mrs. Lee] slipped was present" (Pl.Mem. 7), plaintiffs cross-moved to amend the complaint to assert the following theories of liability:

1. The sea and weather conditions were so unstable that the owners had a duty to issue special warnings and to supervise passengers as they moved about the ship.

2. The construction of the bannister was defective in that it was affixed to the wall with brackets that made it difficult or impossible to obtain a firm grip.

3. The allegedly worn condition of the carpet and the metal stripping on the lips of the steps contributed to the accident.

4. The rainy weather created a duty to inspect the stairs for wetness and slickness.

5. The owners breached the alleged duty to inspect the stairwell for rain, spilled drinks and ice cubes.

Defendants, perhaps understandably, oppose leave to amend. They suggest, implicitly, that plaintiffs newly proposed theories are fictional. They point out that the ship's log described sea and wind conditions as good and the weather as "light rain." (Lambos Aff.Ex.A) They have provided photographs, the authenticity and accuracy of which are undisputed, that show that one easily could get a firm handgrip on the bannister, fully encircling the rail with one's hand. (*Id.* ¶ 11 & Ex.B) They have provided also a plan of the ship, the accuracy of which also is undisputed, that demonstrates that the stairway in question was an internal stairway with no access to the outside decks (*id.* ¶ 12 & Ex.C), thus undercutting plaintiffs' suggestion that the rain enhanced the danger of wetness on the stairwell. They assert, moreover, that plaintiffs' application for leave to amend comes too late in the day, as the discovery period ended even before plaintiffs' made their cross-motion.

## Discussion

### The Motion for Summary Judgment

Inasmuch as plaintiffs concededly were passengers under duly issued passenger tickets, which are maritime contracts, this action is governed by the general maritime law of the United States, at least to the extent that the federal courts have established applicable federal admiralty rules. *E.g., Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 313–14, 75 S.Ct. 368, 370–71, 99 L.Ed. 337 (1955); *Vavoules v. Kloster Ltd.,* 822 F.Supp. 979, 981 (E.D.N.Y.1993). This is so even though the action was commenced in state court under the "saving to suitors clause," 28 U.S.C. § 1333(1). *Celeste v. Prudential–Grace Lines, Inc.,* 35 N.Y.2d 60, 358 N.Y.S.2d 729, 315 N.E.2d 782 (1974).

Passengers injured aboard a vessel have a cause of action in admiralty if the injury is caused by negligence imputed to the owner or operator of the vessel. *Monteleone v. Bahama Cruise,* 838 F.2d 63 (2d Cir.1988); *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169 (2d Cir.1983). The standard of conduct is "one of reasonable care under the circumstances." *Monteleone,* 838 F.2d at 64–65 (citing *Rainey,* 709 F.2d at 172); *accord,*

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 631–32, 79 S.Ct. 406, 410–11, 3 L.Ed.2d 550 (1959). It must reflect "[t]he extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger ..." *Rainey*, 709 F.2d at 172. At the same time, "[t]here is no sound reason to require that a carrier exercise a high degree of care for those trifling dangers which a passenger meets 'in the same way and to the same extent as he meets them daily in his home or in his office or on the street, and from which he easily and completely habitually protects himself.'" *Id.* at 171 (quoting *Livingston v. Atlantic Coast Line R. Co.*, 28 F.2d 563, 566 (4th Cir.1928)).

■ Against this background, the principles governing "slip and fall" cases arising at sea in circumstances that involve no special risks associated with the maritime location of the accident are similar to those that govern in cases arising ashore. The owner is liable for accidents caused by defects of which the owner has actual or constructive knowledge. *Monteleone*, 838 F.2d at 65–66.[2]

■ Putting aside, for the moment, plaintiffs' cross-motion for leave to amend, defendants would be entitled to summary judgment dismissing this complaint. Mrs. Lee here attributed the accident—both in her November 1993 statement to the owner and in her deposition—solely to her having twisted her ankle when she stepped on melting ice cubes found on the stairway. There is no evidence whatsoever that the owners were responsible for the presence of the ice cubes. There is no evidence that the owners or their agents knew that the ice cubes were there. And there is no evidence as to how long the ice cubes had been on the steps,

except of course the common sense proposition—conceded by plaintiffs—that ice cubes quickly melt, which suggests that they had not been there long. The Court therefore turns to the motion for leave to amend.[3]

*The Cross–Motion to Amend*

■ Rule 15(a) provides that leave to amend shall be freely given. Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here there is no issue of dilatory purpose and, in view of the lack of any factual showing, of prejudice to the defendants. In consequence, the focus must be on the extent of and reasons for the delay, whether the application is made in bad faith, and whether the amendment would be futile. The request is denied on the alternative grounds that the request is an unduly delayed effort to bolster the case in a questionable manner and in any event would be futile.

■ The proposed amendment would add as alleged causative factors in the accident the allegedly rough sea conditions, the claim that the railing did not permit a proper grip, the allegedly worn condition of the carpeting, the metal stripping on the stair edges, and the rainy weather. By the very nature of these circumstances, Mrs. Lee must have known both of their existence and of their alleged contribution to the accident from the moment she fell. Indeed, the existence of each save the bannister rail point was mentioned in her deposition. Significantly, however, Mrs. Lee did not then suggest that any played a causative role. This has two impli-

---

**2.** In a maritime case, of course, the owner may be liable also on the basis of unseaworthiness or for negligently creating a dangerous condition that causes an accident. *See, e.g., Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir.1991) (unseaworthiness); *Monteleone*, 838 F.2d at 65 (negligence).

**3.** The third party defendant also opposes defendants' motion for summary judgment, claiming that the ship's doctor was negligent in treating Mrs. Lee at the time of the accident, that his

negligence contributed to the overall poor result, and that the owners are responsible for that negligence. The ship's doctor, however, is regarded as an independent contractor. The ship's owner is not vicariously liable for his alleged negligence. *Cummiskey v. Chandris, S.A.*, 895 F.2d 107, 108 (2d Cir.1990); *Malmed v. Cunard Line Limited*, 1995 WL 505915 (S.D.N.Y.1995); *see also Johnson v. Commodore Cruise Lines, Ltd.*, 897 F.Supp. 740, 745 (S.D.N.Y.1995).

cations for plaintiffs' motion for leave to amend.

First, plaintiffs cannot explain the untimeliness of the motion—which comes ten months after the consensual court-ordered cutoff date of February 15, 1995 and more than two years after the accident—on the basis of lack of knowledge of the facts. Indeed, plaintiffs have offered no explanation of why the plaintiffs did not rely on these alleged factors earlier. *See, e.g., Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir. 1995) (delay of two and one half years after commencement of action justified denial of leave to amend); *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.,* 22 F.3d 458, 462 (2d Cir.1994) (delay of four months after deadline for amendments justified denial).

Second, the circumstances suggest that the request for leave to amend reflects an evolutionary development in plaintiffs' case that falls under the heading of bad faith. As Mrs. Lee's November 1993 statement and her March 1995 deposition show, she then entertained no doubt as to the cause of the accident. She stepped on ice cubes which caused her to twist her ankle and fall on her left knee. Only when defendants moved for summary judgment—and demonstrated that plaintiffs were in serious danger of losing the case because plaintiffs could not link the ice cubes to a breach of duty by the owners or their agents—did plaintiffs first suggest that the weather, the handrail, the carpeting or the metal stripping played a role. This circumstance indicates that the failure to advance these other factors earlier was the product of bad faith—the factors were not regarded as causative, did not really exist, or some combination of both. *See Vine v. Beneficial Finance Co.,* 374 F.2d 627, 636–37 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) (affirming denial of leave to amend where facts known to plaintiff from outset and plaintiff awaiting outcome of motion to dismiss before seeking leave). Moreover, certain of these now allegedly causative factors are subject to most serious question. Plaintiffs, for example, have not responded to defendants' proof that the stairwell was an interior one that was not subject to the elements or to the photographs demonstrating the ease with which one could wrap one's hand around all three hundred sixty degrees of the handrail.

These considerations alone would lead the Court to deny the cross-motion for leave to amend. As noted, however, the Court concludes also that the proposed amendment would be futile, as the factors upon which plaintiffs now would rely would be insufficient to salvage their case even if leave to amend were granted.

First, Mrs. Lee now claims that "the ship was rolling and pitching to a degree that endangered passengers." (Lee Aff., Dec. 29, 1995, ¶¶ 2.A., 2.E.) While Mrs. Lee said at her deposition that the ship was pitching and the seas "rough," she acknowledged also that when she descended the stairs, she was "holding on a little bit [, that she did n]ot really grab hold but for balance ..." (Lee Dep. 66), and that she was carrying a glass of wine in her right hand (*id.* 59–60) which she did not even drop when she fell (*id.* 70). Her testimony about the wine glass and the handrail is not entirely consistent with the account of a pitching vessel and, in fact, tends to support the description of the sea contained in the ship's log. Even assuming the accuracy of Mrs. Lee's contention as to the sea condition, however, it contributes nothing to the sufficiency of plaintiffs' case. The thrust of plaintiffs' position seems to be that the ship owed its passengers a duty, borne of the allegedly adverse weather conditions, to issue a special warning to passengers and to supervise their movements about the ship. But the duty is one of reasonable care in all the circumstances. It is undisputed that the stairway in question had several warning signs at key locations advising passengers to "Watch Your Step." No reasonable trier of fact could find that the warning signs were inadequate to discharge the owners' duty given the fact that even landlubbers are bound to recognize that a stairway on a pitching ship presents obvious dangers. At least equally important, the plaintiffs' have failed to provide any evidence whatever of a causal link between the alleged instability of the ship and the injury. The fact remains that Mrs. Lee has attributed her fall to her

having stepped on ice cubes. She never has contended that the pitching of the ship caused her, in whole or in part, to lose her balance.[4]

The allegedly worn condition of the carpeting and the metal stripping on the step edges stand the plaintiffs in no better stead. There is no suggestion that the carpeting was torn or ragged, that Mrs. Lee caught her foot on the carpeting, or that the carpeting or metal stripping otherwise contributed to the fall.

Finally, the reference to the rainy conditions and the bannister railing, in view of the evidence supplied by the owners, would be insufficient to raise a genuine issue for trial for reasons already discussed.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted. Plaintiffs' cross-motion for leave to amend the complaint is denied on the grounds that it was unduly delayed, that it is not brought in good faith, and that the proposed amendment would be futile. Plaintiffs' direct claim against the third party defendant, for which there is no independent basis of federal jurisdiction,[5] is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

---

**4.** The contention, rather, is that the instability of the ship gave rise to a duty to inspect the stairway more frequently and to supervise the passengers' movements. With due respect, neither suffices to defeat defendants' motion. As far as inspection is concerned, there is no basis in this record for concluding that inspections even every five minutes would have given the owners or their agents knowledge of the ice on which Mrs. Lee slipped. Nor is it even remotely clear why reasonable care would have required supervision of passengers as plaintiffs suggest.

**5.** A plaintiff may assert a direct claim against a third party defendant only if there is an independent basis of federal jurisdiction. *Owen Equip. Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). As the plaintiffs and the third party defendants all are citizens of New York, and as there is no other independent basis of federal jurisdiction over that claim, there was no subject matter jurisdiction over the direct claim to begin with. Given that the basis of federal jurisdiction with respect to plaintiffs' claims against the defendants is diversity of citizenship, 28 U.S.C. § 1367(b) prohibits the exercise of supplemental jurisdiction over plaintiffs' direct claim against the third party defendant. Even if there were supplemental jurisdiction, the Court would decline to exercise it in view of the dismissal of plaintiffs' action against the defendants.