[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10693
_____

D.C. Docket No. 1:16-cv-24707-JLK

JENNIFER SUTTON,

Plaintiff - Appellant

versus

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian corporation
a.k.a. Royal Caribbean Cruises LTD,
d.b.a. Royal Caribbean Cruise Line,
d.b.a. Royal Caribbean International,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 16, 2019)

Before WILSON, JILL PRYOR and THAPAR,[*] Circuit Judges.

PER CURIAM:

In this appeal, Jennifer Sutton asks us to reconsider the district court's decision granting summary judgment to Royal Caribbean Cruises, Ltd. In her lawsuit against Royal Caribbean, Sutton alleged that the cruise operator had been negligent in maintaining a Martin MX-10 Extreme Lighting ("MX-10") machine above the dance floor on the *Independence of the Seas* cruise ship and, as a result of that negligence, part of the machine had fallen and struck her on the head. The district court granted summary judgment to Royal Caribbean, ruling that Royal Caribbean had neither actual nor constructive notice of the allegedly dangerous condition posed by the lighting machine. The district court also held that Sutton was not entitled to rely on the doctrine of *res ipsa loquitur* to establish her claim because she had insufficient evidence to support an inference of negligence. After careful review, and with the benefit of oral argument, we affirm the district court in full.

---

[*] Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit, sitting by designation.

## I.    BACKGROUND

**A. Factual Background**

On the last day of her Royal Caribbean getaway cruise, Sutton was on the lower floor of the ship's Labyrinth Night Club when she felt an object hit her head. The object was a mirror from an MX-10 machine suspended above the dance floor.[1]  Sutton experienced her first-ever migraine headache soon after she was struck by the mirror, and she has continued to experience frequent, intense migraine headaches since.

The MX-10 machines are lighting instruments that flash colored light, at varying angles, across Royal Caribbean's night club.  Each MX-10 machine has a rotating oval mirror used to reflect light for a disco ball-like effect.  A metal bracket is affixed to the back of the oval mirror; that bracket is attached by two three-millimeter bolts to a rotating shaft below the motor.[2]

---

[1] Sutton argues that she was struck by a mirror and an attached bracket; Royal Caribbean argues she was struck only by a mirror.  At summary judgment, we must "view all of the evidence in the light most favorable to the nonmoving party," Sutton, "and draw all reasonable inferences in that party's favor."  *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (internal quotation marks omitted).  For ease of reference only, we refer to the object that struck Sutton as a "mirror."

[2] Some documents in the record indicate that the mirror was attached to the shaft with "bolts;" others use the term "screws."  For ease of reference, we refer to "bolts" attaching the mirror to the shaft.

According to its user manual, the MX-10 "requires regular maintenance to keep performing at [its] peak." Doc. 29-2 at 21.[3] The manual prescribed no set maintenance schedule, instead noting that the machine's "maintenance schedule will depend on the application and should be discussed with your Martin distributor." *Id*. The only warning in the manual was that "[e]xcessive dust, grease, and smoke fluid buildup degrades performance and causes overheating and damage that is not covered by the warranty." *Id*. As for the mirror, bolts, bracket, and shaft, the manual noted only that "[n]o adjustment is required" once the mirror is installed "as long as you do not loosen the tilt motor shaft adaptor."[4] *Id.*

As part of its regular maintenance, Royal Caribbean employed sound and light technicians to regularly clean and inspect the MX-10 machines. Those specialized technicians habitually dusted the MX-10 machines with an air compressor and addressed anything they observed on the machines that "need[ed] maintenance." Doc. 35-2 at 29. Royal Caribbean required its sound and light technicians to report in maintenance logs "anything wrong" or anything that "need[ed] maintenance" on the MX-10 machines. *Id.* The maintenance logs reflect that the MX-10 machines were inspected and cleaned less than two months

---

[3] Citations in the form "Doc. #" refer to numbered entries on the district court docket.

[4] The record does not explain what a "tilt motor shaft adaptor" is, but Sutton's expert explained that this portion of the MX-10 machine's manual "does not relate to . . . securing the mirror to the shaft." Doc. 29-1 at 3. Sutton does not contend that Royal Caribbean ever loosened the tilt motor shaft adaptor.

4

before Sutton's incident.  No issues with the MX-10 machines were documented at that time.  In fact, no issues with the mirrors, bolts, brackets, or shafts on the MX-10 machines were ever documented in the maintenance logs, reported or described by passengers, or noted in safety inspection reports or elsewhere.  In addition, no prior instances of falling sound or lighting equipment were reported on any Royal Caribbean *Freedom* class vessel night club, lounge, or theater during the parties' agreed-upon discovery period, which was three years preceding Sutton's incident.[5]

## B. Procedural Background

During discovery, Sutton produced an expert report from James Lile, an expert in overhead and stage lighting.  Lile offered his "professional recommendation" that the MX-10 machines should be inspected quarterly and that those inspections should follow a detailed checklist.  Doc. 29-1 at 2.  Lile relied on, among other things, the American National Standards Institute's industry guidelines for mounting and inspecting overhead equipment.  The guidelines recommended that owners determine how regularly and thoroughly to inspect their equipment based on the equipment's usage and environment but did not address the frequency or comprehensiveness of inspections.  Lile opined that the MX-10 machine's mirror had fallen because the bolts connecting the bracket to the shaft

---

[5] Royal Caribbean's *Freedom* class vessels included the *Freedom of the Seas*, the *Liberty of the Seas*, as well as the *Independence of the Seas*.

5

"more likely than not loosened over time." Doc. 29-1 at 3, 5. He surmised that Royal Caribbean had not performed quarterly inspections and that it was "[m]ore like[ly] than not [that Royal Caribbean] should have known that the mirror was coming loose and more likely than not [that] the failure to properly inspect and maintain caused the mirror to detach and fall on" Sutton's head. *Id*. at 5.

Royal Caribbean filed a motion for summary judgment, and Sutton offered her expert's report in response. The district court granted the motion. The district court ruled that there was "no evidence . . . establishing that [Royal Caribbean] was on notice of the alleged dangerous condition posed by the mirror or the MX-10 lighting machine." Doc. 47 at 4. Without evidence of similar incidents, the court reasoned, Royal Caribbean had no duty to its passengers and was entitled to summary judgment. The district court also determined that Sutton could not rely on the evidentiary doctrine of *res ipsa loquitur* because the record supported competing reasonable inferences about what caused the mirror on the MX-10 machine to fall.

This is Sutton's appeal.

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321

6

(11th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.   ANALYSIS

Sutton argues on appeal that the district court erred in granting summary judgment to Royal Caribbean. We disagree. The district court properly concluded that Royal Caribbean was entitled to summary judgment on two grounds: (1) Royal Caribbean owed Sutton no duty of care because it had no actual or constructive notice of a dangerous condition caused by the MX-10 machines, and (2) Sutton could not rely on the doctrine of *res ipsa loquitur* to support her claim.

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). We apply general principles of negligence to maritime tort cases. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To prevail on her negligence claim, a plaintiff must show "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Id.* This case centers on the first and second elements.

7

## A. Actual or Constructive Notice

We first address whether Royal Caribbean owed Sutton a duty. A cruise ship operator owes to its passengers the duty of exercising "ordinary reasonable care under the circumstances." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). We will not hold a ship operator liable unless it "had actual or constructive notice of [a] risk-creating condition." *Id.* Liability thus depends upon whether the ship operator either knew, or else should have known, about the allegedly dangerous condition that the plaintiff claims caused her injury. *Id.*

We have identified two ways in which, in the absence of evidence of actual notice, a passenger plaintiff can establish that a ship operator had constructive notice of a risk-creating condition. First, she can put forward evidence that "the defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (alteration adopted) (internal quotation marks omitted). Second, she can submit "evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Id.* (internal quotation marks omitted).

We address the second way first. In this case, there was no evidence that Royal Caribbean actually knew of the existence of a dangerous condition. Sutton therefore had to come forward with evidence that Royal Caribbean had constructive notice that the MX-10 machine posed a danger to cruise passengers.

8

But Sutton identified no prior incidents involving overhead lighting equipment. Despite Royal Caribbean's policy requiring documentation of any problems with the MX-10 machines, Sutton identified no prior instances in which Royal Caribbean's technicians who regularly inspected and maintained the MX-10 machines reported any issues, safety or otherwise, with the mirrors, bolts, brackets, or shafts of the lighting machines. *See Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 66 (2d Cir. 1988) (noting that a ship operator's "regular inspections" weigh against a finding of constructive notice). Nor did Sutton identify any prior accident reports, passenger reviews or complaints, inspection reports, or other documents evidencing any actual or potential safety issues involving the MX-10 machines on the subject vessel or other Royal Caribbean vessels that would alert the cruise ship operator to any danger posed by the MX-10 machines. *See Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspections"). And, as Royal Caribbean points out, the MX-10 machine's manual stated that the mirrors, once installed, need not be adjusted.

Without evidence of substantially similar incidents or reports of a potential danger, *see Guevara*, 920 F.3d at 720, Sutton failed to show that Royal Caribbean had constructive notice of any risk-creating condition posed by the MX-10

9

machines.  Given this absence of evidence, Sutton failed to establish a genuine issue of material fact that would merit a trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Sutton argues that Lile's opinion created a genuine issue of material fact as to whether Royal Caribbean was on notice that it needed to inspect the bolts on the MX-10 machines.  Lile opined that the bolts on the lighting machines would have loosened over time due, in part, to "sound vibration," and that Royal Caribbean, had it been following an industry standard inspection schedule, would have detected those loosening bolts.  Doc. 29-1 at 4.  Sutton argues that Lile's opinion gave rise to a reasonable inference that "the defective condition existed for a sufficient period of time to invite corrective measures," the first *Guevara* means of establishing constructive notice.  *Guevara*, 920 F.3d at 720 (alteration adopted) (internal quotation marks omitted).

Lile's opinion fails to create a reasonable inference giving rise to any genuine issue of material fact.  Although we are required to view the facts and draw reasonable inferences in favor of the party opposing summary judgment, Sutton, inferences "based on speculation and conjecture [are] not reasonable." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (internal quotation marks omitted).  Even if we assume that Lile's opinion was sufficient to create a genuine issue of material fact that the bolts on the MX-10

10

machine loosened over time, his opinion that industry standards prescribe quarterly inspections does not support an inference that quarterly inspections would have detected loosening bolts. What's more, Royal Caribbean had a regular inspection and maintenance program for the MX-10 machines, yet there was no indication of a problem with the machines. Indeed, the MX-10 machines had been inspected two months—less than a quarter—before the incident. Sutton's expert's opinion is mere speculation, and "speculation [is] insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015); *see also Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) ("The mere implication of actual or constructive notice is insufficient to survive summary judgment; rather, a plaintiff must show specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." (internal quotation marks omitted)). Because Sutton's expert's opinion supported no reasonable inference that Royal Caribbean should have known of an allegedly dangerous condition, the district court did not err in granting summary judgment on her claim.

## B. Res Ipsa Loquitur

Sutton also challenges the district court's determination that she failed to make the requisite showing to avail herself of the evidentiary doctrine of *res ipsa*

11

*loquitur* to prove that Royal Caribbean was negligent.  We reject her argument

because she has failed to establish that the doctrine applies here.[6]

*Res ipsa loquitur* is an evidentiary doctrine that permits an inference of

negligence when the facts warrant, but do not compel, that inference.  *See Johnson*

*v. United States*, 333 U.S. 46, 48 (1948).  In maritime law, the plaintiff is not

entitled to rely on the *res ipsa loquitur* doctrine unless she can show three

elements:  "(1) the injured party was without fault, (2) the instrumentality causing

the injury was under the exclusive control of the defendant, and (3) the mishap is

of a type that ordinarily does not occur in the absence of negligence."  *United*

*States v. Baycon Indus., Inc.*, 804 F.2d 630, 633 (11th Cir. 1986) (citing *Johnson*).

In carrying her burden under the third prong, a plaintiff "must demonstrate the

---

[6] It is an open question whether a maritime plaintiff's failure to show actual or constructive notice—that is, to establish a duty—precludes her from relying on the *res ipsa loquitur* doctrine to establish negligence.  Several district courts in this circuit have concluded that a plaintiff is not required to show that a cruise ship owner or operator had actual or constructive notice of the allegedly defective condition in order to raise a *res ipsa loquitur* inference of negligence under maritime law.  *See, e.g.*, *Millan v. Celebration Cruise Operator*, *Inc.*, 212 F. Supp. 3d 1301, 1306 (S.D. Fla. 2015) ("[A] plaintiff is not required to show the defendant's actual or constructive notice of the defective condition in order to raise a *res ipsa loquitur* inference of negligence under maritime law."); *Morhardt v. Carnival Corp.*, No. 16-24580-CIV-GRAHAM/SIMONTON, 2017 WL 8772506, at \*4 (S.D. Fla. Dec. 4, 2017); *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1314 (S.D. Fla. 2017) ("A cruise operator's lack of actual or constructive knowledge of a risk-creating condition does not, as a matter of law, preclude a plaintiff from arguing that the [*res ipsa loquitur*] doctrine applies."). However, Royal Caribbean did not contest that Sutton could invoke the doctrine of *res ipsa loquitur* despite her failing to prove that Royal Caribbean had actual or constructive notice of the allegedly dangerous condition.  We thus need not decide whether Sutton's failure to establish that Royal Caribbean had actual or constructive notice precludes her from invoking the *res ipsa loquitur* doctrine.  Even if we assume that Sutton could rely on the *res ipsa loquitur* doctrine in these circumstances, she failed to establish that it applies.

absence of equally probable alternative causes for her injury." *Trigg v. City & Cty. of Denver*, 784 F.2d 1058, 1060 (10th Cir. 1986) (citing Restatement (Second) of Torts § 328D cmt. f (Am. Law Inst. 1965));[7] *see also Manhattan by Sail, Inc. v. Tagle*, 873 F.3d 177, 180 (2d Cir. 2017) ("For res ipsa loquitur to apply, a claimant must show that the event is of a type that *ordinarily* does not occur in the absence of negligence.").

Sutton failed to come forward with evidence demonstrating that her injury ordinarily would not have occurred without negligence.  The record supported at least two other equally probable causes of Sutton's injury besides Royal Caribbean's negligence.  First, the MX-10 machine's mirror might have fallen due to a design defect, given that no adjustment was required to the mirror after installation, the MX-10 machines were inspected fewer than two months before the incident, and Royal Caribbean had no prior problems with the MX-10 machines. Second, the MX-10 machine's mirror might have fallen because the bolts connecting the bracket to the shaft had loosened undetectably.  Evidence in the record supports this inference, too.  Sutton's expert opined that the bolts might have loosened due to "sound vibration[s]" in the night club, and the maintenance logs showed that Royal Caribbean had cleaned and inspected MX-10 machines two

---

[7] In the absence of well-developed maritime law on a particular issue, the court may rely on federal common law or state law to supplement maritime law so long as it does not alter or overrule maritime law in so doing.  *See Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999).

months before the incident, yet there was no indication that the technicians observed any loose bolts.  Doc. 29-1 at 4.  Given these equally probable inferences about the cause of the injury, the district court correctly determined that Sutton could not proceed on a *res ipsa loquitur* theory of negligence.

Sutton argues that the district court erred by applying a heightened *res ipsa loquitur* standard.  Specifically, she argues that the district court required her to eliminate all other possible causes, in effect making her prove her case at summary judgment.  We cannot agree.  Sutton came forward with no evidence—from her expert or any other source—that would allow a reasonable jury to rule out a design defect or an undetectable loosening of bolts.  In the absence of any evidence from which the jury could have eliminated other equally probable causes of Sutton's injuries, the district court correctly determined that she was not entitled to rely on the doctrine of *res ipsa loquitur* to sustain her negligence claim.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court granting summary judgment to Royal Caribbean.

**AFFIRMED.**

14