**Vincent MARCHEWKA and Susan Marchewka, Plaintiffs,**

v.

**BERMUDA STAR LINES, INC., Club ABC Tour, and Kurz Moran Shipping Agencies, Inc., Defendants.**

**No. 90 Civ. 4895 (DAB).**

United States District Court, S.D. New York.

Sept. 18, 1996.

Subin Associates, New York City (Charles J. Hurowitz, of counsel), for Plaintiffs.

Martocci & Ingram, New York City (John G. Ingram, of counsel), for Defendant Bermuda Star Lines, Inc.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiffs Vincent and Susan Marchewka bring this action against Defendant Bermuda Star Lines, Inc. ("BSL") for injuries and loss of consortium resulting from a fall from a ladder aboard a cruise ship belonging to the Defendant.[1] Defendant now moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the ground that the action is time barred under the provisions of the passage contract. Defendant also claims that Plaintiffs fail to make out a prima facie case of negligence against BSL.

## I. BACKGROUND

On July 4, 1987, Vincent Marchewka, his wife Susan Marchewka, and two of their children boarded the Bermuda Star, a cruise ship, in New York for a seven day trip to Bermuda. (Vincent Marchewka Dep. at 15–16, 19.) The Marchewkas received the passage contracts for their cruise at their home approximately six weeks prior to the departure date. (Susan Marchewka Dep. at 6.) On July 8, 1987, the fourth day of the cruise, Mr. Marchewka awoke at approximately 7:00 a.m. in the top bunk bed of the room he shared with his wife and children aboard the Bermuda Star. (Vincent Marchewka Dep. at 21, 24.) He attempted to climb down the ladder from the bed to reach the floor. (Vincent Marchewka Dep. at 23, 25.) As Mr. Marchewka placed his right foot on the top rung of the ladder, the rung broke away from its sides and Mr. Marchewka fell to the floor. (Vincent Marchewka Dep. at 25–26, 28; Susan Marchewka Dep. at 8.) Mr. Marchewka injured his right ankle, right shin, right knee, upper back, buttocks, the back of his head, and the back of his neck. He had not experienced any problems with the lad-

der prior to his fall. (Vincent Marchewka Dep. at 24–25.)

Stephen Field, BSL's claim manager at the time of the accident, testified that after the accident, personnel of the Bermuda Star's machine shop repaired the ladder by welding the rung back into place. He further testified that the ladder was then returned to the Marchewkas' cabin. According to his testimony, no records were kept of the repair and routine inspections of ladders were not conducted. (Field Dep. at 11–12, 32–33, 41.)

About thirty minutes after the accident, a ship employee took Mr. Marchewka to the ship's infirmary in a wheelchair. (Vincent Marchewka Dep. at 43–44.) Dr. Isagani Cruz examined him and put an ace bandage on Mr. Marchewka's knee, bandaged a wound on his shin, and gave him Ibuprofen for the pain. (Martocci Aff. Ex. E.) Dr. Cruz signed a "Report of Personal Accident or Illness to Passenger or Visitor" documenting statements made by and treatment given to Mr. Marchewka. (Martocci Aff. Ex. E.)

At the time of the accident, BSL issued two types of passage contracts, a group passage contract and an individual passage contract. The two contract types contained identical terms and conditions, only the face sheet on the embarkment copy was different. (Field Dep. at 24–25.) These passage contracts at paragraph 22 state:

(a) [t]he Carrier and/or vessel shall not be liable for any claim whatsoever of the Passenger howsoever and wheresoever arising unless written notice thereof with full particulars shall be delivered to the Carrier or its agents as follows:

1. Within (6) six months from the day when the death or injury occurred in respect of any claim for loss of life or bodily injury in any case where section 4283A[2] of the Revised Statutes of the United States shall apply.

. . . .

---

1. Club ABC Tours and Kurz Moran Shipping Agency, Inc. were named as Defendants in the Complaint, but Plaintiffs subsequently discontinued the action as to them by stipulation.

2. This section refers to 46 App.U.S.C. § 183b.

(b) Suit to recover on any claim against the Carrier and/or vessel shall not be maintainable unless:

1. Suit is initiated within one (1) year from the date when death or injury occurred in respect of any claim for loss of life or bodily injury in any case where said Sec. 4283A shall apply.

(Martocci Aff. Ex. B at 3.) This provision appears on page four of the passage contract.

Mr. and Mrs. Marchewka have no recollection of what happened to their passage contract after embarking on the Bermuda Star. However, the sample passage contract presented at the taking of the deposition was similar to the passage contract they received. (Susan Marchewka Dep. at 6–7.) Mr. Field testified as follows regarding the handling of passage contracts upon embarking:

The terminal has an area where we can set up a desk for embarkation and the passengers go through embarkation. They go through usually by cabins. So one desk would handle cabins 1 to 100 and another would be 101 to 200. Until we get up to all the cabins. On board the passengers would have to, obviously, get on line. When they get to the embarkation desk they ask for their tickets, passage contract tickets. The person working the embarkation desk would then take the embarkment copy of the passage contract ticket and retain that. The passenger would be given a passenger copy which also includes pages 1 through 9 with the terms and the conditions of the passage contract. . . .

(Field Dep. at 54–55.) Field further testified that the language on the embarkment copy of the contract would also appear on the passenger copy. (Field Dep. at 55.)

Mr. and Mrs. Marchewka filed a complaint to recover damages for injuries resulting from the fall and loss of consortium [3] in the Supreme Court of the State of New York on June 21, 1990, almost three years after the accident. (Martocci Aff. Ex. A.) Defendant subsequently removed to federal court based on diversity of the parties, pursuant to 28 U.S.C. § 1332.

---

**3.** Because the loss of consortium claim is derivative of the bodily injury claim, that claim is viable only as long as the bodily injury claims remain

## II. DISCUSSION

The principles applicable to summary judgment are familiar and well-settled. Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir. 1988). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986).

As a general rule, all ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. *LaFond v. General Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir.1995). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. LILCO*, 933 F.2d 187, 191 (2d Cir.1991); *see also Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991).

### A. Validity of Restriction Clause

The Second Circuit places two constraints on a sea carrier's use of contractual limitations on liability for personal injuries. First, the limitations must comply with the provisions of 46 App.U.S.C. § 183b which provides:

(a) It shall be unlawful for the manager, agent, master, or owner of any sea-going

---

viable. *Griffin v. Garratt–Callahan Co.*, 74 F.3d 36, 37, 40 (2d Cir.1996).

vessel ... transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such a period for institution of suits to be computed from the day when the death or injury occurred.

46 App.U.S.C. § 183b; *see Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 45 (2d Cir.1990). In the case at bar, Paragraph 22 of the passage contract requires notice within six months and initiation of the suit within one year. Accordingly, the contractual limitations of the passage contract comply with the restrictions imposed by 46 App.U.S.C. § 183b.

■ Second, in order for the limitation to be enforceable, the ticket must "sufficiently alert the passengers as to the restrictions of their rights." *Spataro,* 894 F.2d at 45; *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 9 (2d Cir.1995) (applying same standard in deciding whether a forum selection clause had "legal effect"); *Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11 (2d Cir.1968). Specifically, the Second Circuit requires "that sea carriers reasonably communicate any limitations period to their passengers." *Spataro,* 894 F.2d at 46; *Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337, 340 (S.D.N.Y.1981) ("in order for the conditions to be incorporated into the contract of carriage, the ticket must reasonably communicate their importance to the passenger"). "Whether this standard [of reasonable communicativeness] has been met is a question of law for the court." *Kientzler v. Sun Line Greece Special Shipping Co.,* 779 F.Supp. 342, 346 (S.D.N.Y.1991).

■ In determining whether the restriction has been reasonably communicated, some district courts in the Second Circuit have compared the passage contract in question with others that have been considered in this circuit. *See Raskin,* 521 F.Supp. at 340–41 (comparing the passage contract in question with those in *Silvestri, McQuillan v. 'Italia' Societa Per Azione Di Navigazione,*

386 F.Supp. 462 (S.D.N.Y.1974), and *Lipton v. National Hellenic Am. Lines,* 294 F.Supp. 308 (E.D.N.Y.1968)); *McQuillan,* 386 F.Supp. at 465–66 (comparing the passage contract in question to those in *Silvestri* and *Lipton* ), *aff'd,* 516 F.2d 896 (2d Cir.1975).

In *Raskin,* the ticket conditions were contained in thirteen numbered paragraphs. 521 F.Supp. at 341. The heading "Ship Ticket Conditions" appeared in bold face, but the actual conditions were in "exceedingly small print" and all capital letters. Paragraph 2 informed the ticket holder "that all relations between the Passenger and the Owner shall be ... governed by these Conditions." *Id.* The warning that the passage contract was "issued subject to the terms, conditions, and regulations printed opposite" appeared in the third and final sentence of a paragraph at the bottom of the ticket stub. *Id.* at 342. The contractual period of limitations was located in paragraph 4(e), which was located "approximately three-quarter of the way down the left-hand column" of the two columns of print. *Id.* at 341. "No warnings or admonitions [appeared] on the cover of the ticket." *Id.* The court concluded "that the draftsmen [did not do] all that they reasonably could to communicate the importance of these conditions to the passenger." *Id.* The court found "it significant that the post-*Silvestri* cases enforcing contractual periods of limitations have all involved tickets or coupons with conspicuous facial warnings." *Id.*

In *McQuillan,* the court found that the ticket in question reasonably communicated "the importance of the terms and conditions to the passenger and therefore [the terms and conditions of the passage contract were] incorporated into the contract." 386 F.Supp. at 466. In that case, the words "Italian Line" appeared at the top of the passage contract. *Id.* at 465. Centered beneath these words, superimposed on the image of three anchors, appeared the words "passage contract." Below the three anchor logo, were two columns of print, the right column in English and the left column in Italian. In "clearly legible type" the following words appeared: "Terms of Passage Contract. Passengers are kindly requested to read the conditions of this contract before accepting."

*Id.* at 466. Following additional text, passengers are informed that the admonition continues on the next page. On the following page, in "smaller but still legible type," the passage contract stated that passage on the vessel was "subject to the terms set forth in [the] passage contract, printed on pages 3, 4, 5, 6." *Id.* at 466. The contract contained sixteen articles with the title of each article appearing in larger bold-face type. *Id.* The restrictive clauses appear in articles thirteen and fourteen. *Id.* at 467.

In *Spataro*, the caution began on the fifth page of an eight page contract. 894 F.2d at 46. The word "notice" was displayed in medium-size lettering in all capital letters. The caution continued in smaller letters "THE PASSENGER'S ATTENTION IS SPECIFICALLY DIRECTED TO THE TERMS AND CONDITIONS OF THIS CONTRACT APPEARING ON PAGES 6, 7, AND 8." The sixth page of the contract stated in bold letters, "Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of the Passenger Contract Ticket by Passenger shall constitute the Agreement of Passenger to these Terms and Conditions." The contractual period of limitations was contained on page seven, paragraph thirteen. The court found "that the Kloster Cruise's ticket reasonably communicated the contractual limitations period to [plaintiff]." *Id.* The court concluded that placing the warning on the fifth page was not "*per se* invalid" because that page contained information the passenger would most likely read, including the fare and the date of departure. *Id.*

In the case at bar, in the lower left corner of the cover of the passage contract a box contains the following statement, "IMPORTANT NOTICE: Each passenger should carefully examine the conditions of this ticket." [4] (Martocci Aff. Ex. B.) The first page of the contract appears in two column format. Centered at the top of the first column is the header "CONDITIONS OF CONTRACT," in bold average-sized lettering. Beneath the header, the ticket states "Accep-

tance Of This Ticket By The Passenger Shall Constitute An Acceptance By The Passenger, As That Word Has Been Defined, Of All The Terms And Conditions Set Forth Herein." This statement appears in the same bold average-size type as the column header. Next, in small, legible type is a paragraph stating that the terms of the contract cannot be waived without an "express, written waiver signed by the Master or an executive officer of Bermuda Star Line, Inc." The next paragraph states, in the same small print, "NOTICE: The passenger's attention is particularly drawn to the Terms and Limitations appearing on this and the following pages of this Contract." (Martocci Aff. Ex. B.)

In this case, unlike the passage contract in *Raskin*, the cover of the ticket alerts the passenger to examine the conditions of the contract. Similar to *McQuillan*, the conditions of the contract are clearly marked by the header "Conditions of Contract." Further, similar to *Spataro* and *McQuillan*, the first paragraph of the conditions informs the passenger that by accepting the ticket they, as passengers, are subject to the conditions listed. Thus, this Court finds that the carrier reasonably communicated the terms and the conditions to the passengers.

■ Plaintiffs attempt to distinguish *McQuillan* and *Spataro* based on Vincent Marchewka's failure to positively identify the ticket in question. However, a passenger may be charged with notice of the conditions of the ticket even if that passenger never had the ticket in his possession. *Kientzler*, 779 F.Supp. at 346 (charging passenger with notice though she never saw the actual ticket because the person holding the ticket, another employee for the same company, acted as her agent); *DeCarlo v. Italian Line*, 416 F.Supp. 1136 (S.D.N.Y.1976) (finding that a friend of the plaintiff acted as an agent and consequently charged plaintiff with notice of the passage contract's conditions even though plaintiff never saw passage contract).

---

4. The Court was provided with a photocopy of the sample passage contract. As a result, it could not be determined whether the carrier used contrasting colors to highlight important information. Whether or not contrasting colors were used, the notice on the cover warning passengers that they are bound by the contract conditions was clearly and immediately visible.

According to the depositions before the Court, it appears that Mrs. Marchewka had possession of Mr. Marchewka's ticket. Susan Marchewka identified the sample ticket, shown to her at her deposition, as appearing to be the similar to the ticket they had received. (Susan Marchewka Dep. at 7.) Susan Marchewka acknowledges receiving the tickets at the home she shares with Vincent Marchewka approximately six weeks prior to the cruise. (Susan Marchewka Dep. at 6.) Further, it is evident that Vincent Marchewka had very little involvement with planning the trip. He did not recall that the tickets were mailed to his home, and was unaware that he and his wife paid for the tickets. (Vincent Marchewka Dep. at 16–17; *cf.* Susan Marchewka Dep. at 5–6.) This case is analogous to *DeCarlo* in that there is no evidence that Mr. Marchewka saw the ticket, but his wife had possession; the court in *DeCarlo* found that the friend acted as the plaintiff's agent in acquiring the ticket. Likewise, Mrs. Marchewka acted as Mr. Marchewka's agent in acquiring and holding his ticket. Accordingly, Mr. Marchewka is chargeable with knowledge of the ticket's conditions, and those conditions are binding upon him. *Kientzler,* 779 F.Supp. at 346; *DeCarlo,* 416 F.Supp. 1136. Accordingly, his action is time barred.

## B. Applicability of *Res Ipsa Loquitur* [5]

Plaintiffs also argue that the doctrine of *res ipsa loquitur* applies to these facts and requires the Court to deny Defendant's motion for summary judgment. For a case to be submitted to a jury on the theory of *res ipsa loquitur,* three requirements must be met—the event must be of a type that does not ordinarily occur in the absence of someone's negligence, the event must be caused by an agency or instrumentality within the exclusive control of the defendant, and the event must not be caused by any voluntary action or contribution of the plaintiff. *Dermatossian v. New York City Transit Auth.,* 67 N.Y.2d 219, 226, 501 N.Y.S.2d 784, 788, 492 N.E.2d 1200, 1204 (N.Y.1986).

Defendant does not dispute whether Plaintiffs meet the first and third requirements. Defendant argues, however, that Plaintiffs cannot satisfy the exclusive control requirement because the ladder was accessible to Mr. Marchewka, his wife, and two of their children prior to the accident.

"The purpose of the exclusive control requirement is to eliminate within reason the possibility that the event was caused by someone other than the defendant." *St. Paul Fire & Marine Ins. Co. v. City of New York,* 907 F.2d 299, 301 (2d Cir.1990). "[T]he evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.'" *Dermatossian,* 67 N.Y.2d at 227, 501 N.Y.S.2d at 789, 492 N.E.2d at 1205 (quoting 2 *Harper and James,* Torts § 19.7 at 1086); *see also St. Paul Fire & Marine Ins. Co.,* 907 F.2d at 302. "Although the possibility of all other causes need not be eliminated all together, 'their likelihood must be so reduced that the greater probability lies at defendant's door.'" *St. Paul Fire & Marine Ins. Co.,* 907 F.2d at 302 (quoting *Dermatossian,* 67 N.Y.2d at 227, 501 N.Y.S.2d at 789, 492 N.E.2d at 1205). In order "to invoke the doctrine of *res ipsa loquitur,* the plaintiff must establish control by the defendant 'of sufficient exclusivity to fairly rule out the chance that [the injury] was caused by some agency other than defendant's negligence.'" *Id.*

In *Dermatossian,* the plaintiff was injured when he struck his head on a defective grab handle as he stood up to leave defendant's bus. The trial court permitted the case to go to the jury on the theory of *res ipsa loquitur.* The jury returned a verdict in favor of the plaintiff. *Dermatossian,* 67 N.Y.2d at 221, 501 N.Y.S.2d at 785, 492 N.E.2d at 1201. The New York Court of Appeals reversed finding that "[t]he proof did not adequately exclude the chance that the handle had been damaged by one or more of defendant's passengers who were invited to use it." *Id.* at 228, 501 N.Y.S.2d at 789, 492 N.E.2d at 1205.

---

**5.** Though resolution of this issue is not required in light of the action being barred by the terms of the passage contract, the Court will address this aspect of the motion so that, should Plaintiffs prevail upon appeal, the applicability of the doctrine can be determined as well.

In *St. Paul Fire & Marine Ins. Co.,* E. Gluck Corporation lost a half-million dollar inventory of watches due to water damage. 907 F.2d at 300. The source of the water was a fully open drain pipe on the seventh floor of the building in room 747. Plaintiff's watches were on the sixth floor. The seventh floor was subleased to the City of New York by Contel Business Systems, Inc. The case was submitted to the jury on the theory of *res ipsa loquitur.* The jury ruled in favor of the plaintiff. The Second Circuit reversed, finding that the plaintiff "failed to establish [the City of New York's and Contel's] exclusive control over room 747." *Id.* at 304.

 In the instant case, the ladder rung broke along both sides. (Vincent Marchewka Dep. at 28.) "[T]he four welds that held the rung previously had snapped, disintegrated, were no longer effective in adhering the rung to the ladder." (Vincent Marchewka Dep. at 30.) Plaintiffs and two of their children were in the room for four days prior to the accident. Hence, the ladder was not in the exclusive control of the Defendant, as it was accessible to at least these four individuals prior to the accident.

Thus the exclusive control requirement is not met, and the doctrine of *res ipsa loquitur* is not applicable to this case.

C. Notice Requirement for a Finding of Negligence

 Defendant argues that it cannot be found liable for the accident because it did not have actual or constructive notice of the risk-creating condition. "[A] shipowner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them." *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir. 1988); *see also Lopez v. A/S D/S Svendborg,* 581 F.2d 319, 323 (2d Cir.1978).

Mr. Marchewka admitted that he had not experienced any problems with the ladder prior to the fall. (Vincent Marchewka Dep. at 24–25.) Plaintiffs present no evidence that Defendant BSL knew or had reason to know of the dangerous condition.

Thus, Defendant cannot be held liable for the allegedly defective condition of the ladder.

### III. CONCLUSION

For the reasons set forth herein, Defendant BSL's motion for summary judgment is GRANTED.

The Clerk of the Court is directed to dismiss the Complaint.

SO ORDERED.