**Susan C. McDONOUGH and Arnold Sameroff, Plaintiffs,**

v.

**CELEBRITY CRUISES, INC. and The Zenith, in rem, Defendants.**

**No. 98 Civ. 1517(RWS).**

United States District Court, S.D. New York.

Aug. 26, 1999.

Brune & Richard, New York City, by Hillary Richard, of counsel, Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, MI, by Mark R. Daane, Angela L. Jackson, of counsel, for plaintiff.

Hill, Betts & Nash, New York City, by Gregory W. O'Neill, Martin Domb, William F. Clair, Jr., of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants Celebrity Cruises, Inc. ("Celebrity") and the M/V ZENITH (the "ZENITH") (collectively the "Defendants") move for an order of summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the claims brought against them by Susan C. McDonough ("McDonough") and Arnold Sameroff ("Sameroff") (collectively the "Plaintiffs"). For the reasons set forth below, the motion is granted in part, and denied in part.

### The Parties

McDonough and Sameroff are citizens of the State of Michigan, and at all times relevant to the instant litigation were husband and wife.

Celebrity is a foreign corporation authorized to do business in New York. Celebrity is the operator of the ZENITH, a passenger cruise ship.

### The Facts

In March of 1997, Plaintiffs and their minor daughter were passengers aboard the ZENITH for a one week cruise embarking from San Juan, Puerto Rico. Late in the evening of Wednesday, March 26, 1997, they attended a buffet known as "Island Night." The buffet was served on Deck 11 of the ZENITH. On Deck 11 passengers were provided with a live band, a dance floor, buffet tables at which food was served, tables and chairs for their use, and two tables at which they could purchase alcoholic beverages.

During Island Night, passengers could obtain drinks either by purchasing them at the two bar stations on Deck 11, or by ordering them from waiters who circulated on Decks 11 and 12 of the ZENITH. Deck 12 is a partial deck immediately above Deck 11, and contains a rectangular opening over the area of Deck 11 in which the swimming pools, the dance floor, and portions of the deck adjoining those areas are located. While passengers are allowed to take food and drink with them to Deck 12, no tables or chairs are provided on that deck. A gunwale six inches wide surrounds Deck 12, and the distance from the top of that gunwale to the floor of Deck 11 is sixteen feet.

One of the alcoholic drinks offered to passengers during Island Night is a "specialty" beverage known as a "Coco Loco," which is served inside a green, unhusked coconut. To prepare the drink, the top portion of the coconut is removed, and the bottom portion is sliced to create a flat base, approximately three inches in diameter. A coconut produced by Defendants during discovery weighed four pounds in its unprepared state, and it is uncontro-verted that the Coco Loco drink is both heavier and more difficult to hold than a regular glass.

Shortly after midnight on March 26th, McDonough, standing on Deck 11, was struck on the top of her head by an object that apparently fell from Deck 12. Neither she nor Sameroff saw how the object had come to strike her or who would have been responsible for dropping the object. After she was struck, however, McDonough saw a pile of slush—which she assumed to be the contents of a Coco Loco—approximately five feet away from her. Sameroff saw something that looked like a coconut approximately ten feet away from McDonough, located under one of Deck 11's tables. Though no passengers came forward who had seen McDonough struck, an investigation by the ship's Safety Officer concluded that the accident was the result of the carelessness of a guest.

As a result of the blow she received, McDonough claims to have suffered, in addition to other injuries, continuing neurological complications such as "closed head disorder" and occilopsia. Her continuing health problems have allegedly affected both the quality of her daily life and her career.

Plaintiffs filed their complaint on March 22, 1998. Count I of the complaint seeks recovery against the Defendants for negligence.[1] Count II of the complaint seeks damages for Sameroff's loss of consortium due to the injuries suffered by McDonough. Oral argument was heard on the instant motion on April 7, 1999, at which time the motion was deemed fully submitted.

---

**1.** More specifically, Plaintiffs allege, *inter alia,* that Defendants were negligent in the following respects:

a) Failing to prohibit large rum-filled coconuts on the upper deck and over the lower deck and dance floor;

b) Failing to prohibit said coconuts from being placed on a flat railing located over the lower deck and dance floor;

c) Failing to install a barrier on the upper deck railing to prevent items from being knocked onto the deck and dance floor below;

d) Failing to protect its patrons from injury;

e) Failing to protect those persons on the lower deck and dance floor from falling objects from the upper deck; ....

Compl. ¶ 20.

### Discussion

Summary judgment is appropriate only where the evidence is such that a reasonable jury could not return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(c), Fed.R.Civ.P., it shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Second Circuit has explained:

"As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

*Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (*quoting Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (internal citations omitted)). Although courts are reluctant to grant summary judgment in negligence cases, "the mere fact that [a] case involves a claim of negligence does not preclude a granting of summary judgment." *Cummiskey v. Chandris, S.A.*, 719 F.Supp. 1183, 1186 (S.D.N.Y.1989), *aff'd*, 895 F.2d 107 (2d Cir.1990).

■ The standard of care used in maritime actions such as this is "reasonable care under the circumstances." *See Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 170 (2d Cir.1983); *Calderera v. Chandris, S.A.*, No. 91 Civ. 8181(KMW), 1993 WL 362406, at *3 (S.D.N.Y. Sept. 13, 1993); *Turner v. Phaidon Navigation S.A.*, No. 90 Civ. 2538(RWS), 1991 WL 280663, at *2 (S.D.N.Y. Dec. 23, 1991). As the Second Circuit has observed, the degree of care demanded of a vessel owner or operator is itself dependant on whether or not the circumstances of maritime travel differ from those of ordinary activities conducted on *terra firma:*

"The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case."

*Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64–65 (2d Cir.1988) (*quoting Rainey*, 709 F.2d at 172). Though often mentioned, it is worth repeating that a vessel owner or operator is not the insurer of the safety of its passengers. *See Monteleone*, 838 F.2d at 65; *Friedman v. Cunard Line Ltd.*, No. 95 Civ. 5232(CSH), 1997 WL 698184, at *2 (S.D.N.Y. Nov.10, 1997).

■ Because the nature of McDonough's injury is in no manner peculiar to maritime travel, ordinary negligence principles apply, *see Turner*, 1991 WL 280663, at *2, and the Defendants' conduct is measured against a standard of ordinary, reasonable care. *See Calderera*, 1993 WL 362406, at *3; *cf. Jaques–Boyle v. Celebrity Cruise Lines, Inc.*, No. 95 CIV. 8788(JES), 1997 WL 685338, at *1 (S.D.N.Y. Nov. 4, 1997) ("When the risk is tantamount to one that would exist on shore and raises no hazards peculiar to navigation, then the duty is the same as that owed by a land-based hotel.").

■ Defendants' essential contention is that, even assuming that McDonough was struck on the head by a coconut provided to passengers as part of their Island Night festivities, the absence of any prior notice that Coco Locos could cause injuries to passengers standing below Deck 12's gunwale merits dismissal of the complaint. Defendants point out, and Plaintiffs do not seriously contest, that Coco Locos have been served for a number of years during Island Night buffets without incident—on

the ZENITH and on other cruise ships operated by Celebrity and its predecessors—and posit that the wholesale absence of any coconut-related accidents provides grounds for an order granting them summary judgment. Defendants also contend that Plaintiffs' inability to establish the precise manner in which the coconut struck McDonough militates in favor of dismissal, as nothing Plaintiffs have presented rules out the possibility that a coconut struck McDonough as the result of the intentional act of another passenger.

Plaintiffs counter that the absence of previous injuries from coconuts does not merit dismissal, as a demonstration of notice—actual or constructive—is only required where a plaintiff's theory of liability is based upon a "defect" unremedied by the defendant. Here, they contend, the Defendants created the very circumstances that resulted in McDonough's injuries, and those injuries were the foreseeable result of serving coconut beverages in the way that they did. Plaintiffs point out that, given the Coco Loco's flat bottom, it could well be expected that passengers would place the drinks on a flat surface. They note that the gunwale on Deck 12, while only six inches wide and hardly adequate to prevent drinks from being knocked onto passengers below, would provide a logical resting spot for a Coco Loco, especially given the absence of any tables on Deck 12 or any other place upon which the drinks could be conveniently rested. Furthermore, Plaintiffs contend, Defendants' employees and agents regularly saw passengers drinking coconut drinks at the Deck 12 gunwale while watching people below, and had been instructed to pick up items left on that railing because of the possibility of injury from items knocked to the deck below. Heavy, awkward, and difficult to hold for some, so claim Plaintiffs, Coco Locos served on or brought to Deck 12 were an accident waiting to happen to those at the buffet below. In support of their contentions, Plaintiffs offer the opinion of an asserted expert, the owner and director of International Bartenders School, that specialty drinks such as the Coco Loco are designed to be consumed only by seated customers and that "[a]llowing customers to stand at the rail holding Coco Loco drinks is a recipe for disaster, an accident waiting to happen." (Lessa Decl. ¶ 6.)

The parties' papers indicate a number of other disputes, the most prominent of which concerns Defendants' policy of not permitting passengers to use glassware on open decks such as Decks 11 and 12. This policy is of moment, so the Plaintiffs claim, because the coconuts served as part of Island Night were in violation of that policy. According to Defendants, however, this policy is intended only to avoid the hazards associated with broken glass, and not as a general policy to prevent passengers from dropping heavy items, such as coconuts, on other passengers. The parties also dispute the applicability of the doctrine of *res ipsa loquitur* to the facts of this case.

To be sure, in a number of cases courts have granted summary judgment or judgment as a matter of law in favor of defendants where the plaintiff, injured while on a cruise due to a defective condition onboard the ship, could proffer no evidence whatsoever that the ship's operator had notice of the condition. *See Monteleone*, 838 F.2d at 65–66 (no notice that defective screw protruded from brass stairway "nosing"); *Rainey*, 709 F.2d at 172 (no proof that appellee had actual or constructive notice of presence of stool on dance floor); *Cummiskey*, 719 F.Supp. at 1188–90 (no notice of wetness of ship's lounge area); *Marchewka v. Bermuda Star Lines, Inc.*, 937 F.Supp. 328, 335 (S.D.N.Y.1996) (no notice of problems with bunk bed ladder); *Lee v. Regal Cruises, Ltd.*, 916 F.Supp. 300, 303 (S.D.N.Y. 1996) (no notice of presence of melting ice cubes on staircase), *aff'd*, 116 F.3d 465, 1997 WL 311780 (2d Cir.1997). Dismissal was appropriate in those cases because, under "ordinary negligence principles," a ship's owner or oper-

ator is "held responsible for defective conditions aboard ship only when it had actual or constructive notice of them." *Calderera,* 1993 WL 362406, at *3.

However, those cases involved "otherwise safe areas where the sudden emergence or presence of an·object (the protruding screw, the stool on the dance floor) brought about a defective and dangerous condition," *Friedman,* 1997 WL 698184, at *3, and not a contention by the plaintiff that the defendant(s) themselves *created* unsafe or foreseeably hazardous conditions. This is an important distinction. *See Lee,* 916 F.Supp. at 303 n. 2 ("In a maritime case, of course, the owner may be liable also on the basis of unseaworthiness or for negligently creating a dangerous condition that causes an accident.") (citations omitted); *Saia v. Misrahi,* 129 A.D.2d 621, 621–22, 514 N.Y.S.2d 256 (2d Dep't 1987) ("Where ... a theory of liability submitted to the jury is that the appellant itself created a dangerous condition which led to the ... injury, notice is not an essential part of the cause of action."). To require a plaintiff to also establish notice in a case where the defendant's own activities created a foreseeable and unreasonable risk of harm would be inappropriate. Such a requirement would have the absurd result that negligence actions could only be brought after a dangerous condition or practice created by a defendant claimed a previous victim, whose own recovery would be barred by the absence of notice.

■ Plaintiffs do not really posit that Defendants were negligent in failing to remedy a defective condition of which they had actual or constructive notice, but rather that they were negligent in creating a situation in which it was foreseeable that cruise passengers could drop a heavy coconut and injure passengers below. Such a claim is akin less to the cases Defendants cite concerning defects than to other cases, both state and federal, that discuss the general liability of defendants due to the foreseeable uses of their property or premises. *See, e.g., Stagl v. Delta Airlines,*

*Inc.,* 52 F.3d 463, 470–73 (2d Cir.1995) (holding that plaintiff, injured by a rogue passenger's baggage, raised issues of fact precluding summary judgment as to airline's allegedly negligent management and design of baggage claim area); *Seiders v. Testa,* 464 A.2d 933, 935 (Me.1983) ("[I]n the case at bar, the jury rationally could have found the defendants negligent, either in placing their tables and chairs in such a configuration that the plaintiff was likely to encounter the obstacle that she did while attempting to arise, or in failing to foresee that patrons could easily move the lightweight tables and chairs around so as to bring about the same result."); *Cruz v. New York City Transit Auth.,* 136 A.D.2d 196, 197, 526 N.Y.S.2d 827, 829 (2d Dep't 1988) (holding that, because alleged defect involving subway railing was created by defendant, "actual notice" of the "defect" was established for purposes of a *prima facie* case); *Philpot v. Brooklyn Nat. League Baseball Club,* 303 N.Y. 116, 121, 100 N.E.2d 164, 167 (1951) (finding plaintiff injured by bottle thrown or dropped at Ebbets Field to be entitled to jury determination whether "the means adopted by the defendant ... were sufficient to protect the plaintiff as a spectator ... from risk of bodily harm reasonably to be foreseen from the misuse or mishandling of empty glass beverage bottles."). Moreover, that the specific injuries suffered by McDonough were, in part, caused by the intervening act(s) of another passenger does not automatically extinguish liability, provided that the intervenor's actions were "a normal or foreseeable consequence of the situation created by the defendant's negligence." *Stagl,* 52 F.3d at 473 (*quoting Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980)); *see Aponte v. Trans World Airlines, Inc.,* No. 94 Civ. 6337(LMM), 1996 WL 527339, at *3 (S.D.N.Y. Sept. 16, 1996) (same); RESTATEMENT (SECOND) OF TORTS § 302A (1965) ("An act or an omission may be negligent if the actor realizes or should realize that it involves an unrea-

sonable risk of harm to another through the negligent or reckless conduct of the other or a third person.").

There is, of course, a connection between notice and foreseeability, in that the absence of any coconut-related incidents despite Defendants' hosting of a great number of Island Night buffets would tend to indicate that an accident such as the one alleged by McDonough was not necessarily foreseeable, or that the operator took reasonable care under the circumstances. Moreover, to the extent that Plaintiffs seek to rely upon an expert's determination that "specialty" drinks such as the Coco Loco are intended to be served to stationary patrons to demonstrate that Defendants did not meet the applicable standard of care, Defendants' history of serving Coco Locos without incident will presumably provide a strong rebuttal or grounds for cross-examination—to the extent that the expert's opinion is admissible at all. *See Friedman,* 1997 WL 698184, at *3 n. 2 ("Cunard argues in its motion papers that no prior accidents or injuries had occurred while using the main salon for aerobic exercises. That forms a legitimate basis for questioning Dr. Lucenko's opinions, but does not justify a summary disposition of plaintiffs' claim."). This is not to say that McDonough's offering of an expert opinion automatically prevents the granting of summary judgment, as it

assuredly does not,[2] but rather that the open question in this case is unamenable to summary disposition.

■■■ Whatever the ultimate merits of McDonough's negligence claim may be, summary judgment would not be an appropriate disposition of that claim. The question of whether Defendants exercised reasonable care under the circumstances cannot be answered at this juncture, and Defendants' motion is therefore denied in part. In light of this denial, the parties' dispute concerning the doctrine of *res ipsa loquitur* is surplusage that need not be exhaustively addressed.[3]

■■■ Unlike McDonough's claim, however, Sameroff's derivative claim for loss of consortium shall be dismissed. As Defendants correctly observe, the question of whether an injured passenger's spouse may recover damages for loss of society and consortium under general maritime law was squarely presented and decisively resolved in *Friedman,* 996 F.Supp. at 303. In that case, which also arose out of injuries suffered by a passenger aboard a cruise ship, the Honorable Charles S. Haight concluded that such damages could not be recovered under general maritime law. Judge Haight's analysis is both thoughtful and comprehensive, and Defendants have offered nothing of substance

**2.** For example, in *Cummiskey,* 719 F.Supp. at 1188–90, plaintiff's submission of an expert's opinion concerning the suitability of tile material upon which plaintiff slipped, as well as the inappropriate layout of defendants' lounge area, did not prevent the court from granting summary judgment in favor of plaintiff. The court observed that the "use of unreliable and unfounded expert testimony" in that case was insufficient to defeat defendants' motion for summary judgment. *Id.* at 1190.

**3.** It should be noted, however, that Defendants get the better of the debate. *"Res ipsa loquitur* is an often confused and often misused doctrine that enables a [factfinder] presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St. Paul Fire & Marine Ins. Co. v. City of New York,* 907 F.2d 299, 302 (2d

Cir.1990). For a case to be submitted on the theory of *res ipsa loquitur,* three basic requirements must be met:

> the event must be of a type that does not ordinarily occur in the absence of someone's negligence, the event must be caused by an agency or instrumentality within the exclusive control of the defendant, and the event must not be caused by any voluntary action or contribution by the plaintiff.

*Marchewka,* 937 F.Supp. at 334. McDonough cannot satisfy the exclusive control requirement, given the central role that an unknown third party played in the events leading to her injury. While she is ultimately entitled to a determination concerning Defendants' exercise of reasonable care, she is consequently unable to avail herself of the doctrine.

that was not already considered and rejected in *Friedman*.

### Conclusion

For the reasons stated above, Defendants' motion for summary judgment is therefore granted in part and denied in part. The motion is denied insofar as it seeks dismissal of McDonough's claim against Defendants, and granted insofar as it seeks dismissal of Sameroff's claim for loss of consortium.

It is so ordered.