Paul G. GALENTINE, et al., Plaintiffs,

v.

HOLLAND AMERICA LINE—
WESTOURS, INC., et al.,
Defendants.

No. C03–962P.

United States District Court,
W.D. Washington,
at Seattle.

March 12, 2004.

Galentine, Jr, Barbara D Galentine, Plaintiffs.

Kathleen H Knight, Mikkelborg Broz Wells & Fryer, Seattle, for Paul G Galentine, Jr, Barbara D Galentine, Plaintiffs.

Patrick Gaynor Middleton, Forsberg & Umlauf, Seattle, for Hal Nederland NV, Holland America Line NV, Holland America Line Westours Inc, Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION TO STRIKE, AND DENYING PLAINTIFF'S MOTION TO STRIKE

PECHMAN, District Judge.

This matter comes before the Court upon Defendants' Motion for Summary Judgment, (Dkt. No. 17), Defendants' Motion to Strike Stephen Carr's Declaration, (Dkt. No. 43), Plaintiff's Motion for Reconsideration/Clarification re Expert Witness Carr, (Dkt. No. 51), and Plaintiff's Motion to Strike Steve Price's Declarations, (Dkt. No. 54). Having reviewed the pleadings and supporting documents, the Court DENIES Defendant's Motion to Strike Carr's Declaration because any prejudice that Defendant may suffer by admitting Carr's eleven-day late expert report can be ameliorated by various means discussed below. Plaintiff's Motion for Reconsideration/Clarification re Expert Witness Carr is essentially an opposition to Defendants' Motion to Strike Stephen Carr's Declaration. Therefore, that motion is STRICKEN as moot. The Court DENIES Plaintiff's Motion to Strike Price's Declarations because Price's conflicting testimony bears on the weight his testimony should be afforded, but does not warrant striking the testimony outright. Lastly, the Court DENIES Defendant's Motion for Summary Judgment because there are material is-

Michael Robert Caryl, Lawrence A. Costich, Kathleen H. Knight, Mikkelborg Broz Wells & Fryer, Seattle, WA, Dennis Michael Morgenstern, Tampa, FL, for Paul G

sues of fact as to whether Defendants had constructive notice that the automatic sliding doors posed a danger to passengers.

## BACKGROUND

Plaintiff Paul G. Galentine, Jr. ("Galentine") was a passenger with his family on Defendant Holland America Line–Westours, Inc.'s ("Holland America") cruise ship ms RYNDAM in May, 2002. On May 30, 2002, the ship departed Vancouver, British Columbia for an Alaskan cruise. Galentine was with his wife, son, and daughter-in-law on the observation deck (the "Navigation Deck") when the ship departed. His wife and daughter-in-law left the observation deck by walking through a set of automatic sliding doors on the Navigation Deck Plaintiff claims that as his daughter-in-law was walking through the automatic doors, they closed and struck her, causing her to bruise. No other passengers or crew members saw this occur. A few minutes later, Galentine and his son walked through the same set of automatic sliding doors when the doors allegedly struck Galentine, knocking him down. He suffered a fractured hip as a result of the incident. Plaintiff filed suit against Holland America, alleging that it was negligent in operating the automatic sliding doors.

## ANALYSIS

### I. Defendant's Motion to Strike Carr's Declaration

Federal Rule of Civil Procedure 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) [which includes disclosure of expert witness reports] ... is not, unless such failure is harmless, permitted to use as evidence ... on a motion any witness or information not so disclosed." Contrary to Defendant's contention otherwise, the case law is clear that Rule 37(c)(1) establishes an either/or standard in determining whether non-disclosed information is admissible; the non-disclosed information may be admissible if the failure to disclose was either substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001), *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia*, 248 F.3d 29, 33 (1st Cir.2001). Therefore, Carr's declaration is admissible if Plaintiff's failure to disclose his expert report by the deadline was substantially justified or harmless.

Plaintiff's failure to disclose Carr's report by the deadline was without substantial justification, as evidenced by the fact that the Court denied Plaintiff's request to extend the deadline for lack of good cause.

█ The parties contest whether this failure was harmless. The party that wants the information admitted has the burden of proving that his failure to disclose the information in accordance with Rule 26 or other court orders was harmless. *Yeti by Molly*, 259 F.3d at 1107. Most recently, the Ninth Circuit analyzed this harmless element by looking at whether the failure to disclose the information prejudiced the opposing party. *Id.* An earlier Ninth Circuit case set out a five factor test for determining whether, as a general matter, it was appropriate the exclude evidence as a sanction for violating a discovery requirement (the analysis was not specific to Rule 37(c)(1)). *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir.1997). In addition to the prejudice factor, a court is to look to the public policy favoring disposition of cases on their merits, the availability of less drastic sanctions, the court's need to manage its docket, and the public's interest in expeditious resolution of litigation. *Id.*

In *Yeti by Molly*, plaintiff failed to provide its expert report on damages for two

and a half years, disclosing it just 28 days prior to trial. In light of these facts, the court held that it was appropriate to exclude the expert report because plaintiff had not proved that it's failure to provide the report in a timely fashion was harmless. 259 F.3d at 1107. However, the court noted that this was not as severe a sanction as outright dismissal of plaintiff's claims. The court implied that excluding evidence that would make it impossible to advance one's claims and thereby have the effect of an outright dismissal is appropriate when the offending party acted in bad faith. *Id.* at 1106. Here, there is no evidence that Plaintiff's failure to provide Carr's report by the deadline was done in bad faith.

Nonetheless, Defendant maintains that it will suffer prejudice if Carr's declaration is admitted. According to Defendant, Plaintiff's expert gained a tactical advantage in having the opportunity to review Defendant's expert's report prior to producing his own report. Additionally, Defendant argues that it will be prejudiced by having to extend the discovery deadline so that it can depose Carr. (Defendant maintains that it chose not to depose Carr earlier because it assumed that Carr would not appear as a witness since his report was disclosed late.)

The potential prejudice that Defendant claims it will suffer is not so severe as to warrant exclusion, especially given the possibility of ameliorating that prejudice through various means discussed below. While certainly late and past the deadline, Plaintiff did provide the report only eleven days later. Moreover, Plaintiff claims that Defendant knew by the disclosure deadline that Carr would be Plaintiff's expert witness. Defendant does not dispute this. This is unlike the fact patterns in the cases relied upon by Defendant. *See Yeti by Molly,* 259 F.3d at 1106–07 (failed to provide the expert report for two and a half

years), *Ortiz–Lopez,* 248 F.3d at 31–32 (despite repeated motions to compel, plaintiffs failed to provide necessary information in the expert report for six months, stating that they did not have the information, and when the court excluded the report as a result, plaintiffs provided the information the next day, which was the first day of trial, leading the court to conclude that plaintiffs had acted in bad faith), *Hull v. Eaton Corp.,* 825 F.2d 448, 451–52 (D.C.Cir.1987) (plaintiff refused to provide name of expert for over eight months, despite interrogatories and a court order compelling such disclosure).

In this case, trial is set for June 1, 2004. The dispositive motions deadline was March 3, 2004. While the discovery period ended on February 2, the Court will extend the deadline for the limited purpose of taking Carr's deposition, should Defendant chose to do so. If Defendant concludes that there is new evidence from that deposition that would have resulted in a different ruling on its summary judgment motion, Defendant may then file a motion to alter or amend the judgment pursuant to Rule 60. Because Defendant will have an opportunity to depose Carr and have the Court consider any relevant evidence gained from that deposition, the admission of Carr's declaration is not so prejudicial as to warrant exclusion.

The alleged prejudice from allowing Plaintiff's expert the chance to preview Defendant's expert report before producing his own report is remediable by other sanctions. The Court concludes that the appropriate sanction is to allow the jury to be informed of the fact of non-disclosure. Defendant will be allowed to inform the jury of the fact that Plaintiff's expert saw Defendant's expert report before producing his own report. While not striking the evidence, this would remedy the prejudice Defendant's are concerned with; it would

cast doubt on the credibility of Plaintiff's expert.

Because potential prejudice to Defendant can be ameliorated by these two means, the Court DENIES Defendants' Motion to Strike Carr's Declaration.

## II. Plaintiff's Motion to Strike Price's Declarations

Plaintiff's Motion to Strike Price's Declarations is DENIED. In ruling on this summary judgment motion, the Court has looked at all of the evidence submitted to determine if Defendant has meet its burden on summary judgment and if Plaintiff has presented genuine issues of material fact that preclude summary judgment. To the degree that there are conflicting statements in Price's testimony, this goes to Price's credibility, which is not appropriate to consider in ruling a summary judgment motion.

## III. Defendant's Motion for Summary Judgment

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

As a preliminary matter, maritime law applies to this negligence law suit because the tort Plaintiff alleges occurred on a ship traveling in navigable waters. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1320 (11th Cir.1989) (citing *Kermarec*). This is true regardless of the fact that Plaintiff brought his case in federal court based on diversity jurisdiction rather than maritime jurisdiction.

### A. Standard of Care

The parties dispute the standard of care that Defendant owed to Plaintiff as a passenger on its ship. It has been well-settled law since the Supreme Court's opinion in *Kermarec* that ship owners owe a duty of "reasonable care under the circumstances of each case" to all people on board the ship for legitimate purposes. *Kermarec,* 358 U.S. at 632, 79 S.Ct. 406, *In re Catalina Cruises, Inc. v. Luna,* 137 F.3d 1422, 1425 (9th Cir.1998) (citing *Kermarec*), *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73 (6th Cir.1990) (same), *Keefe,* 867 F.2d at 1321 (same). *Kermarec* rejected the concept often used in land-based negligence claims of applying different standards of care depending on the licensee versus invitee status of the person injured. 358 U.S. at 632–33, 79 S.Ct. 406. Nonetheless, the degree of care

that is reasonable increases in tandem with a increased risk unique to maritime travel, such as rough seas. *Catalina Cruises,* 137 F.3d at 1426. In so holding, the court relied on *Rainey v. Paquet Cruises, Inc.,* a Second Circuit opinion that established the general principle that "[t]he extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case." 709 F.2d 169, 172 (2d Cir.1983). The automatic sliding doors at issue here are not unique to maritime travel. Therefore, Defendant Holland America owed Plaintiff Galentine a reasonable duty of care, but not a heightened duty of care.

### B. Actual or Constructive Notice

■ When the allegedly dangerous condition is one that is not particular to maritime travel, a defendant is liable for negligence under the "reasonable care under the circumstances" standard only if it had actual or constructive notice of the condition that created the danger. *Keefe,* 867 F.2d at 1322. *See Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir.1988), *Rainey,* 709 F.2d at 172.

Plaintiff argues that an actual or constructive notice requirement applies only where the allegedly dangerous condition is a transient or temporary condition that was not purposefully created by the defendant. Plaintiff maintains that where a defendant created the allegedly dangerous condition and it is not a transient condition, then the defendant is liable if it created an unsafe or foreseeably hazardous condition.

However, the sole case upon which Plaintiff relies is not persuasive. *McDonough v. Celebrity Cruises, Inc.,* 64 F.Supp.2d 259 (S.D.N.Y.1999). In *McDonough,* plaintiff was injured by a coconut drink that fell from a deck above her. The court held that the defendant was liable if it had created unsafe or foreseeably hazardous conditions. *Id.* at 264. The court distinguished *Rainey, Monteleone,* and other cases requiring notice, concluding that they applied only when "the sudden emergence or presence of an object ... brought about a defective and dangerous condition." *Id. McDonough*'s analysis is unpersuasive for two reasons. First, a falling coconut is not so different from a stool or wet spot on the dance floor (the situations in *Rainey* and *Monteleone* ). Both involve the sudden emergence or presence of an object. As such, *McDonough*'s distinction with the controlling case law is somewhat specious. Second, *McDonough* is unpersuasive in light of *Everett v. Carnival Cruise Lines* and *Meyer v. Carnival Cruise Lines,* both of which applied the notice requirement to non-transient allegedly dangerous conditions. *Everett,* 912 F.2d 1355 (11th Cir. 1990) (plaintiff tripped over a metal cover for a fire door that ran along a walkway) and *Meyer,* 1994 U.S. Dist. LEXIS 214331 (N.D.Cal.1995) (plaintiff injured herself in allegedly unsafe stairway). Therefore, Defendant may be liable if Plaintiff can show that, before Plaintiff's accident, Defendant had actual or constructive knowledge that the automatic sliding doors presented an unreasonably dangerous condition.

■ A defendant is deemed to have constructive notice "if, in the exercise of reasonable care, [the defendant] ought to have known about or discovered the alleged dangerous condition ...." *Ribitzki v. Canmar Reading & Bates,* 111 F.3d 658, 663 (9th Cir.1997). This implies a duty of reasonable inspection. *Id.* Further, constructive notice "requires that a defective condition exist for a sufficient interval of time to invite corrective measures." *Monteleone,* 838 F.2d at 65. Therefore, if by

reasonable inspection, Defendant Holland America could have discovered that the doors were operating in a dangerous manner, then Defendant will be deemed to have constructive knowledge.

 Plaintiff presents evidence through its expert that the sliding automatic doors do not operate according to the manufacturer's installation manual or according to industry standards.[1] In Plaintiff's expert's opinion, the failure to adhere to these standards means that the doors do not operate safely. (Carr Dec., ¶ 16). Specifically, he makes the following statements of fact about the Navigation Deck sliding doors:

- The closing speed of the doors was measured to be 3.36 seconds. Given the weight of the doors, this closing speed is faster than that allowed by industry standards. (Id., ¶ 7).
- The control electronics that allow the adjustment of the closing speed were set in the middle of the range, not at the slowest possible closing speed. (Id.)
- The position of the presence sensors (which trigger the doors to stay open) does not meet industry standards or the instructions in the manufacturer's installation manual. (Id., ¶¶ 10, 12, 15).

Defendant presents conflicting testimony.

- David Trotter, president of a company that installs, services, repairs, and inspects automatic sliding doors, stated that he inspected the Navigation Deck doors and that they met or exceeded industry standards. (Trotter Dec., ¶¶ 2–3).

- RYNDAM's chief electrician states that from March, 2002 to July, 2002, the closing speed on all sliding doors was kept at minimum levels. (Zonneveld Dec., ¶ 4).

- The closing speed on a sister ship of RYNDAM (on which the chief electrician now works) is 4 seconds. (Id.)

- The chief electrician inspected the sliding doors on RYNDAM weekly and never found it necessary to adjust the settings. (Id., ¶¶ 3–4).

- He inspected the doors following Plaintiff's accident and found them to be functioning properly and not in need of repair or adjustment. (Id., ¶ 5).

As each party's evidence shows, there are disputed material facts as to whether the doors operate according to industry standards. This bears directly on the factual question of whether the doors operate in an unreasonably dangerous manner. A reasonable jury could conclude, after hearing the parties' conflicting evidence, that a reasonable inspection would have revealed that the doors did not operate according to industry standards as well as the manufacturer's installation manual, and therefore did not operate in a safe manner. Moreover, a reasonable jury could conclude that Defendant had constructive notice based on the fact that Defendant's chief electrician states that he inspected the doors weekly. Based on this disputed evidence alone, summary judgment is not appropriate.

---

1. Defendant's contention that Plaintiff's expert Stephen Carr is not qualified to testify as an expert on automatic sliding doors is without merit. The admissibility of expert opinion testimony turns on whether the expert has special knowledge, skill, experience, training, or education on the subject matter at hand and whether his testimony will assist the trier of fact to determine a fact at issue. *United*

*States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.2000). Carr has sufficient experience to overcome this low threshold. Moreover, Defendant's contention that Carr's expertise with elevators does not carry over to automatic sliding doors goes to the credibility of Carr's testimony regarding the automatic doors. The court is prohibited from weighing credibility on summary judgment.

■ Summary judgment is also inappropriate given the conflicting testimony of Steven Price, a manager in Holland America's Risk Management Department, concerning whether there have ever been incidents in which any of the sliding doors on RYNDAM struck passengers or crew members. Defendant relies on Price's declarations for its argument that it did not have actual or constructive notice that the automatic sliding doors presented an unreasonably dangerous condition. Defendant submitted three declarations by Price with Defendant's opening brief, each successive declaration amending the previous one. Defendant also submitted a fourth declaration by Price with it's reply brief, which supplemented and amended the third declaration. Plaintiff points out these inconsistencies as well as inconsistencies between these statements and statements Price made in depositions taken December 17, 2003 (in a different case) and January 20, 2004 (in this case). Without restating all of the varied testimony that Plaintiff points to, it is clear that there are inconsistencies regarding what records Price searched in his effort to determine whether there had been any incidents in which passengers or crew members were struck by any sliding doors on the RYNDAM or her sister ships.[2] Additionally, there are inconsistencies regarding whether Price's search included all incidents, or only those that resulted in claims brought by passengers or crew members. Likewise, there are inconsistencies regarding when Price knew what in relation to the timing of his various declarations. Such inconsistencies go to Price's credibility. Defendant's argument that Price had not intended to misstate the facts in his earlier declarations also goes to Price's credibility. Because Price's credibility is at issue, Price's declarations cannot provide the basis for summary judgment in Defendant's favor.

Lastly, the Court notes that neither the incident involving Plaintiff's daughter-in-law nor Florence Anderson support Plaintiff's contention that Defendant had actual or constructive notice of the danger posed by the doors. First, even if it is true that Plaintiff's daughter-in-law was struck by the closing automatic doors minutes before Plaintiff's accident, this does not establish that Defendant had actual or constructive knowledge of this incident and therefore of the allegedly dangerous condition of the door. Plaintiff does not maintain that any Holland America crew member saw the doors strike the daughter-in-law. She did not report the incident to any crew member. Second, even if it is true that Florence Anderson was struck by the automatic sliding doors on Defendant's VEENDAM cruise ship on February 20, 2003, and even if those doors on the VEENDAM are identical to the Navigation Deck doors on the RYNDAM, this happened well after Plaintiff's accident on May 30, 2002. Therefore, it does not prove that Defendant had actual or constructive knowledge of the allegedly dangerous condition of the doors on May 30, 2002.

## CONCLUSION

The Court DENIES Defendant's Motion to Strike Carr's Declaration because any prejudice that Defendants may suffer by admitting Carr's eleven-day late expert report can be ameliorated by less severe means than excluding Carr's testimony. The Court STRIKES as moot Plaintiff's Motion for Reconsideration/Clarification re

---

2. Based on the fact that Defendant relied on its chief electrician's declaration concerning the closing time for doors on VEENDAM, a sister ship of RYNDAM, the Court can presume that Defendant intends to claim that at least some of the automatic doors on RYNDAM's sister ships are similar to those on RYNDAM.

Expert Witness Carr because it is properly characterized as an opposition to Defendant's motion to strike. The Court DENIES Plaintiff's Motion to Strike Price's Declarations because Price's conflicting testimony bears on the weight his testimony should be afforded, but does not warrant striking the testimony outright. Lastly, the Court DENIES Defendant's Motion for Summary Judgment because there are material issues of fact as to whether Defendant had constructive notice that the automatic sliding doors posed a danger to passengers.

The clerk is directed to provide copies of this order to all counsel of record.